Paul X. DUHART et al., Plaintiffs-
Appellants,

v.

Norman A. CARLSON, Director of Pris-
ons, John N. Mitchell, as Attorney Gen-
eral of the United States, Defendants-
Appellees.

No. 71–1666.

United States Court of Appeals,
Tenth Circuit.

Sept. 5, 1972.

Rehearing Denied Oct. 11, 1972.

**472**

Bruce D. Pringle, Denver, Colorado, for plaintiffs-appellants.

John J. Immel, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., and Richard L. Meyer, Asst. U. S. Atty., on the brief), for defendants-appellees.

Before PHILLIPS, HILL and BARRETT, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

The above-named appellants brought this action in the United States District Court for the District of Columbia against the above-named appellees as a class action.

The appellants filed an application under 28 U.S.C.A. § 1915 for authorization to prosecute the action without prepayment of fees and costs. In an affidavit supporting their application, the appellants averred that they were American citizens; that because of poverty they were unable to pay the costs of such action; and that they believed that they were lawfully entitled to the redress which they sought in the action.

The District Court of the District of Columbia granted the application. Thereafter, on the motion of the United States Attorney for the District of Co-

lumbia, the court transferred the case to the United States District Court for the District of Kansas.

In their complaint, the appellants alleged:

That the court had jurisdiction under 28 U.S.C. §§ 1331; 1391(e); 1343(1), (2), (4); 1651(a); 2284(2), (3); 2201; 2202; and Title VI of the Civil Rights Act of 1964;

That they were prisoners incarcerated in the United States Penitentiary at Leavenworth, Kansas; that they were black prisoners; that they had been unconstitutionally discriminated against by the prison officials of such penitentiary and by members of the staff of the penitentiary, because of their race and religion (Islam); and that they had been denied the rights of peaceable assembly and of freedom of speech.

Appellants further alleged:

That the appellees, as Director of the Bureau of Prisons of the United States and as Attorney General of the United States, had conspired with Robert I. Moseley, warden of such penitentiary, and the members of his staff to deny the "blacks" their rights of "freedom of expression and black programs and right of Muslims to practice their religion."

The appellants sought relief by declaratory judgment, mandamus, and injunction.

Section 1915(a), (d), and (e), in part here material, reads:

"§ 1915. *Proceedings in forma pauperis*

"(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

\* \* \* \* \* \*

"(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

"(e) Judgment may be rendered for costs at the conclusion of the suit or action as in other cases, but the United States shall not be liable for any of the costs thus incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States. * * * "

 It is preferable procedure for a federal district court to authorize the commencement and prosecution of an action without the prepayment of costs, if the requirements of § 1915(a) are satisfied on the face of the papers submitted, and if the court thereafter discovers that the allegation of poverty is untrue, or if it is satisfied that the action is frivolous or malicious, then to dismiss the action.[1] Under such a procedure, a complete record can be made in an orderly fashion, for the benefit of both the district court and the court of appeals if an appeal is taken. That procedure was followed in the instant case.

In their answer to the complaint, appellees admitted that the appellants were "presently incarcerated at the United States Penitentiary, Leavenworth, Kansas." They denied each of the other allegations of the complaint.

Coupled with the answer, appellees filed a motion to dismiss the action, on the ground that it was frivolous and malicious, and set up that appellants had brought many complaints in the United States District Court for the District of Kansas in which they made the same allegations and asked for similar relief, and gave the titles and numbers of seven of such cases.

The court dismissed the action, on the ground that it was frivolous and malicious. In a memorandum filed with the order of dismissal, the court said:

" * * * All of the plaintiffs are inmates of the United States Penitentiary, Leavenworth, Kansas. Duhart and Long are parties in Case No. L–1244, pending in this court, which has been tried to the court and is now under advisement. An action brought by Andrews, L–1322, was dismissed by this court and is now on appeal to the United States Court of Appeals, Tenth Circuit. McCray is the plaintiff or petitioner in several cases which have been dismissed as frivolous. In each of the cases mentioned the plaintiff or petitioner has claimed religious and racial discrimination by officers and employees of the Bureau of Prisons. In this complaint, the plaintiffs seek to relitigate issues already litigated in other cases brought by them. I am satisfied that the action is frivolous and malicious."

 A court may take judicial notice of its own records.[2] And it has authority to consult its own records for the purpose of determining whether an action being prosecuted in forma pauperis, notwithstanding the application so to do and the supporting affidavit are regular and sufficient on their face, is in fact frivolous and malicious,[3] and it may dismiss the action if it finds it is frivolous and malicious.[4]

1. Stiltner v. Rhay, 9 Cir., 322 F.2d 314, 317, cert. denied 376 U.S. 920, 84 S.Ct. 678, 11 L.Ed.2d 615; Oughton v. United States, 10 Cir., 310 F.2d 803, 804, cert. denied, 373 U.S. 937, 83 S.Ct. 1542, 10 L.Ed.2d 693; Cole v. Smith, 8 Cir., 344 F.2d 721, 723.

2. Dixon v. Jacobs, 138 U.S.App.D.C. 319, 427 F.2d 589, 596; Ginsberg v. Thomas, 10 Cir., 170 F.2d 1, 3.

3. Conway v. Oliver, 9 Cir., 429 F.2d 1307, 1308; Diamond v. Pitchess, 9 Cir., 411 F.2d 565, 566.

4. Stiltner v. Rhay, 9 Cir., 322 F.2d 314, 317, cert. denied 376 U.S. 920, 84 S.Ct. 678, 11 L.Ed.2d 615; Oughton v. United States, 10 Cir., 310 F.2d 803, 804, cert. denied, 373 U.S. 937, 83 S.Ct. 1542, 10 L.Ed.2d 693.

The appellants did not in the lower court and do not here challenge the court's findings that their action was frivolous and malicious. Hence, we accept them as true.

By its judgment, the court ordered and adjudged "that the * * * motion to dismiss be granted and that this action * * * is hereby dismissed; and * * * that judgment * * * is hereby entered against the plaintiffs and each of them for the costs of this action, execution to issue upon the request of counsel for the defendants."

■ Appellants contend that § 1915(e) operates to deny indigent plaintiffs their constitutional right to access to the courts of the United States. They argue that:

"* * * Practically speaking, there is no difference in effect between requiring payment of fees before an action may be filed and allowing the trial court, in its discretion, to award costs against an indigent party at the conclusion of the action. If an indigent party knows that fees and costs may be assessed against him at the conclusion of a suit, he may be forced to forego court action in the same manner as if he were required to initially pay a filing fee."

It will be observed that appellants' attack on the statute is not tied to any specific case, and particularly is not tied to the facts in the instant case. Counsel for appellants argues their case as if it was one brought by an indigent; was not frivolous or malicious, but was one they had a perfect right to prosecute to vindicate and protect their rights, and which was dismissed and the costs assessed against them.

■ Of course we have no power to decide a hypothetical case.

In the case of United States v. Raines, 362 U.S. 17, 20, 80 S.Ct. 519, 522, 4 L. Ed.2d 524, the court said:

"The very foundation of the power of the federal courts to declare Acts of Congress unconstitutional lies in the power and duty of those courts to decide cases and controversies properly before them. This was made patent in the first case here exercising that power—'the gravest and most delicate duty that this Court is called on to perform.' Marbury v. Madison, 1 Cranch 137, 177–180, 2 L.Ed. 60. This Court, as is the case with all federal courts, 'has no jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' Liverpool, New York & Philadelphia S. S. Co. v. Commissioners of Emigration, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899. Kindred to these rules is the rule that one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional. * * * In Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586, this Court developed various reasons for this rule. Very significant is the incontrovertible proposition that it 'would indeed be undesirable for this Court to consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation.' Id., 346 U.S. at page 256, 73 S.Ct. at page 1035. The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined. * * *'"

Hence, we must confine our decision to the facts in the instant case, which are these:

The appellants obtained leave under § 1915(a), supra, to prosecute the instant action without prepayment of costs, by an application and supporting affidavit which on their face met all the requirements of § 1915(a), and they commenced the instant action by filing their complaint. The appellees filed an answer in which they admitted appellants were inmates at the Federal Penitentiary at Leavenworth, Kansas, and coupled their answer with a motion to dismiss the action on the ground it was frivolous and malicious. And the court dismissed the action on the ground it was frivolous and malicious, for the reasons set out in its memorandum, and entered judgment against the appellants for the costs of the action.

Appellants strongly rely on the decision of a three-judge federal court in the District of Kansas, in the case of Strange v. James, 323 F.Supp. 1230 (1971). In that case, Strange was charged with first degree robbery, under a Kansas statute. He was taken before a magistrate. He advised the magistrate that he was attempting to employ counsel. The matter was continued. He again appeared before the magistrate and indicated his need for counsel and his willingness to accept court-appointed counsel. The magistrate found that Strange was without funds to employ counsel and appointed counsel for him, pursuant to the Kansas Aid to Indigent Defendants Act,[5] hereinafter referred to as "such Act."

Thereafter, Strange appeared before the magistrate with his court-appointed counsel and the charge was reduced to pocket picking. He was bound over to the Shawnee County District Court. That court found him financially unable to employ counsel and appointed counsel to represent him. He entered a plea of guilty to the lesser charge, sentence was suspended, and he was placed on probation for three years. Thereafter, Strange's court-appointed counsel applied to the State for payment for his services and was paid $500 from the Aid to Indigent Defendants Fund, as provided in such Act.

The recoupment provision of such Act, § 22–4513, provides that whenever any expenditure has been made from the Aid to Indigent Defendants Fund to provide counsel for a defendant, as authorized by § 22–4510 of such Act, such defendant shall be liable to the State for the amount of such expenditure and such amount may be recovered from the defendant by the State for the benefit of the Aid to Indigent Defendants Fund.

Section 22–4513 further provides that within 30 days after such expenditure, the Kansas Judicial Administrator shall send a notice by certified mail to such defendant, stating the amount of the expenditure and demanding payment thereof to the State for the benefit of the Aid to Indigent Defendants Fund within 60 days; and if the sum demanded remains unpaid at the end of 60 days from the date of mailing the notice, the Judicial Administrator shall certify an abstract of the unpaid demand and interest thereon to the clerk of the district court of the county in which counsel was appointed, and the clerk shall enter on his judgment docket the amount of such demand, with interest thereon at six per cent per annum from the date of the expenditure until paid, and such entry shall become a judgment in the same manner and to the same extent as any other judgment under the Code of Civil Procedure, and shall become a lien on real estate of the defendant from the time of the filing thereof, and that execution, garnishment, or other proceeding in aid of execution may issue on such judgment in the same manner as on judgments under the Code of Civil Procedure. It further provided that none of the exemptions provided in the Code of Civil Procedure should apply to such

5. Kan.Stat.Ann.1971 Supp. §§ 22–4501 to 22–4515, inclusive.

judgment, except the homestead exemption.

The Judicial Administrator, in accordance with § 22–4513, sent a notice to Strange by certified mail demanding the payment of $500 by him to the State for the benefit of the Aid to Indigent Defendants Fund within 60 days.

Thereafter, Strange commenced the three-judge court action and sought a judgment declaring that § 22–4513 was unconstitutional and enjoining the enforcement of the claim or any judgment entered thereon against Strange.

In its opinion in Strange v. James, 323 F.Supp. 1230, at 1232, the court said:

"Plaintiff's most appealing contention is that enforcement of Section 22–4513 infringes upon his right to assistance of counsel because the statute has a chilling effect on the exercise of the right to counsel. Conversely, the question may be put whether the continued viability of the decision in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 799 (1963), requires the state to provide free court appointed counsel to those accuses [sic] who, like plaintiff, are financially unable to employ an attorney.

"Beyond question, the Kansas statute deters indigents from exercising their right to the assistance of counsel. * * *"

By its judgment, the three-judge court adjudged that § 22–4513 was unconstitutional and enjoined the enforcement thereof against Strange.

James, as Judicial Administrator, appealed from the judgment of the three-judge court to the Supreme Court of the United States. The Supreme Court affirmed, but on narrower and more specific grounds, the ruling of the three-judge court. See James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600.

The Supreme Court, after stating the facts and the provisions of § 22–4513 substantially as we have, said in its opinion:

"The court below invalidated this statute on the grounds that '[it] needlessly encourages indigents to do without counsel and consequently infringes on the right to counsel as explicated in Gideon v. Wainwright,' * * *.

* * * * * *

" * * * The statute stipulates that save for the homestead, 'none of the exemptions provided for in the code of civil procedure shall apply to any such judgment. . . .' This provision strips from indigent defendants the array of protective exemptions Kansas has erected for other civil judgment debtors, including restrictions on the amount of disposable earnings subject to garnishment, protection of the debtor from wage garnishment at times of severe personal or family sickness, and exemption from attachment and execution on a debtor's personal clothing, books and tools of trade. For the head of a family, the exemptions afforded other judgment debtors become more extensive and cover furnishings, food, fuel and clothing, means of transportation, pension funds, and even a family burial plot or crypt.

"Of the above exemptions, none is more important to a debtor than the exemption of his wages from unrestricted garnishment. * * * This Court has recognized the potential of certain garnishment proceedings to 'impose tremendous hardship on wage earners with families to support.' Sniadach v. Family Finance Corp., 395 U.S. 337, 340, 89 S.Ct. 1820, 1822, 23 L.Ed.2d 349 (1969). Kansas has likewise perceived the burden to a debtor and his family when wages may be subject to wholesale garnishment. Consequently, under its code of civil procedure, the maximum which can be garnisheed is the lesser of 25% of a debtor's weekly disposable earnings or the amount by which those earnings exceed 30 times the federal minimum hourly wage. No one creditor may issue more than one garnishment dur-

ing any one month, and no employer may discharge an employee because his earnings have been garnisheed for a single indebtedness. For Kansas to deny protections such as these to the once criminally accused is to risk denying him the means needed to keep himself and his family afloat.

"The indigent's predicament under this statute comes into sharper focus when compared with that of one who has hired counsel in his defense. Should the latter prove unable to pay and a judgment be obtained against him, his obligation would become enforceable under the relevant provisions of the Kansas Code of Civil Procedure. But, unlike the indigent under the recoupment statute, the code's exemptions would protect this judgment debtor."

The Supreme Court held that the provisions of § 22–4513 of such Act invidiously discriminated against Strange and denied him the equal protection of the laws, in violation of the 14th Amendment, because it provided that, except for the homestead exemption, none of the exemptions provided for in the Code of Civil Procedure for the protection of other judgment debtors should apply to a judgment rendered against an indigent defendant for fees paid from the Aid to Indigent Defendants Fund to counsel, provided such indigent defendant is authorized by § 10 of such Act.

The Supreme Court further observed that such Act "embodies elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law."

■ The Supreme Court held in effect that state recoupment statutes are not ipso facto invalid. It said:

"We * * * recognize that state recoupment statutes may betoken legitimate state interests. But these interests are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors * * *."

Because counsel for appellants in the instant case strongly relies on the decision of the Kansas three-judge court in Strange v. James, supra, we have dwelt at length on the opinion in that case and on the opinion of the Supreme Court affirming the judgment in that case in James v. Strange, supra. We have also given lengthy consideration to those opinions, because they involved another Kansas recoupment statute, and appellants' ground of attack on the statute involved in the instant case is substantially the same as that successfully made in Strange v. James, supra.

We now turn to the question involved in the instant case.

The facts in the case of Fletcher v. Young, 4 Cir., 222 F.2d 222, were very much like the facts in the instant case. There, the appellant Fletcher, plaintiff below, commenced an action in forma pauperis under § 1915(a), supra. He sought to recover a lot in Chevy Chase, Maryland, and rents and profits therefrom. The appellees, defendants below, filed a motion to dismiss on the ground the action was frivolous and malicious; that the plaintiff claimed title to the lot from persons who had mortgaged the lot to Home Owners Loan Corporation; that they defaulted under the mortgage; that foreclosure proceedings followed, and that defendants acquired the lot by purchase at the foreclosure sale; that plaintiff claimed the foreclosure was void, because the Home Owners Loan Corporation was not validly incorporated; and that the same contention had been made by plaintiff and decided against him in a number of cases he had brought in state and federal courts.

The trial court dismissed the action on the ground it was frivolous and malicious. Fletcher appealed. The Court of Appeals held:

"* * * [T]hat, while persons who are unable to pay costs or give security therefor should be allowed to prosecute or defend actions for the protection of their rights without

being required to pay costs or give security, they should not be allowed under the cover of the statute to abuse the process of the court by prosecuting suits which are frivolous or malicious. * * * "

In O'Connell v. Mason, 132 F. 245, at 247, the court said:

"* * * It is quite clear that Congress, while intending to extend to poor and meritorious suitors the privilege of having their wrongs redressed without the ordinary burdens of litigation, at the same time intended to safeguard members of the public against an abuse of the privilege by evil-minded persons who might avail themselves of the shield of immunity from costs for the purpose of harassing those with whom they were not in accord, by subjecting them to vexatious and frivolous legal proceedings. * * * "

A person who is able to prepay the cost of an action has no constitutional right to access to the courts to prosecute an action that is frivolous and malicious, and if he commences such an action and thereafter the court properly finds the action is frivolous and malicious, the court may dismiss the action and adjudge that the costs of the action shall be assessed against him.

Likewise, a person who is an indigent has no constitutional right to access to the courts to prosecute an action that is frivolous and malicious. And although he has obtained leave to prosecute such action without prepayment of costs or giving security therefor, if after he has commenced the action the court becomes satisfied that the action is frivolous and malicious, it may dismiss the action and adjudge that the costs of the action shall be assessed against him. That necessarily follows, because such indigent person had no right to prostitute the processes of the court by bringing a frivolous and malicious action.

There is no element of discrimination or punitiveness in the statute. Clearly, a defendant who has been sub-jected to a vexatious and frivolous legal proceeding, which a plaintiff had no right to bring, is justly entitled to recover his costs.

For the reasons indicated above, the judgment is affirmed.