Ronald **WEAVER; Leo McKaye; Morris Martin, Plaintiffs–Appellants,**

v.

Raymond **TOOMBS; Robert Brown, Jr.; Donald Mason; Robert Mulvaney; Ted Strassburg, Defendants–Appellees.**

No. 90–1012.

United States Court of Appeals, Sixth Circuit.

Argued March 11, 1991.

Decided Nov. 6, 1991.

1006

Ronald Weaver, pro se.

Leo McKaye, pro se.

Morris Martin, pro se.

Jason Julian, Asst. Atty. Gen. (briefed and argued), Corrections Div., Lansing, Mich., for defendants-appellees.

Before JONES, Circuit Judge and ENGEL and WELLFORD, Senior Circuit Judges.

WELLFORD, Senior Circuit Judge.

Plaintiffs, Ronald Weaver, Leo McKaye, and Morris Martin, prisoners at a Michigan penal facility, Ionia Maximum Correctional Facility (IMCF), instituted a 42 U.S.C. § 1983 action alleging deprivation of various constitutional rights against defendants—three lower officials and the warden of IMCF—as well as the Director of the Department of Corrections. The magistrate granted plaintiffs' motion to proceed *in forma pauperis* from the outset. After defendants filed a motion for summary judgment, the district court dismissed the case in a written opinion, finding no set of facts upon which relief could be granted to any of the plaintiffs against any defendant. The plaintiffs appealed the district court decision of December 6, 1989, proceeding *in forma pauperis*, in this court. The judgment was affirmed on October 11, 1990, 915 F.2d 1574. The defendants then made a motion in this court pursuant to 28 U.S.C. § 1915 and Fed.R.App.P. 39(a) for an order taxing costs in the amount of $128 against plaintiffs and allowing the costs to be satisfied by direct resort to plaintiffs' prison accounts. We have appointed counsel for plaintiffs to determine the propriety of the assessment and direct collection of such costs without further court intervention.

Counsel for plaintiffs contends that application of the rule and the statute results in constitutional violations of plaintiffs' rights. The first constitutional claim is that such application under the circumstances "chills the rights of appellants and pauper prisoners similarly situated to enjoy the first amendment right to petition the courts."

Joseph J. Dehner (briefed and argued), Frost & Jacobs, Cincinnati, Ohio, for plaintiffs-appellants.

Next, plaintiffs contend that assessment and collection of such costs against *in forma pauperis* plaintiffs deny them equal protection and offends their due process rights under the fifth amendment. In addressing these constitutional claims, we first observe that there are few cases that deal with the constitutionality of assessing costs under Fed.R.App.P. 39(a).

## I. ACCESS TO COURTS

### A. First Amendment

We recently reviewed the question of assessment of costs by the district court against prisoners who had proceeded *in forma pauperis* in *Sales v. Marshall,* 873 F.2d 115 (6th Cir.1989). Judge Lively observed in *Sales* that being permitted to sue initially without paying costs did not insulate the prisoner from a later imposition of costs under 28 U.S.C. § 1915:

> The plaintiff's indigency does not prevent the taxation of costs against him. The statute that permits an indigent party to proceed *in forma pauperis* merely provides that such a person may commence a suit "without *prepayment* of fees and costs." 28 U.S.C. § 1915(a) (emphasis added). The statute clearly provides for awarding "costs at the conclusion of the suit or action as in other cases." 28 U.S.C. § 1915(e). Adopting this reading of § 1915, several courts of appeals have approved the taxation of costs against indigent civil rights plaintiffs. See *Flint v. Haynes,* 651 F.2d 970, 972–73 (4th Cir.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982); *Harris v. Forsyth,* 742 F.2d 1277, 1278 (11th Cir.1984); *Lay v. Anderson,* 837 F.2d 231, 232–33 (5th Cir.1988). However, when a party claims indigency, this court requires a determination of his or her capacity to pay the costs assessed.

873 F.2d at 120.

*Flint v. Haynes,* 651 F.2d 970 (4th Cir. 1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982), involved a similar situation; there the Fourth Circuit permitted the district court to assess costs under § 1915 against *in forma pauperis*

prisoner plaintiffs who had filed 42 U.S.C. § 1983 actions against prison officials.

The use of the word "prepayment" in subsection (a) indicates that Congress did not intend to waive forever the payment of costs, but rather it intended to allow qualified litigants to proceed without having to advance the fees and costs associated with litigation. By permitting the court to enter judgment for costs "as in other cases," subsection (e) evinces a congressional intent that litigants may eventually be liable for costs. It is clear that § 1915 contemplates the postponement of fees and costs for litigants who are granted *in forma pauperis* status.

> Thus, we find a district court is empowered to award costs even when it has previously granted a litigant the benefits of § 1915(a). We reached the same result in *Perkins v. Cingliano,* 296 F.2d 567, 569 (4th Cir.1961) in which we held "[s]ection 1915(e) is too plain to leave any room for doubt, and completely disposes of the petitioner's contention that costs may not be adjudged against him." *Accord, Duhart v. Carlson,* 469 F.2d 471 (10th Cir.1972); *Pasquarella v. Santos,* 416 F.2d 436 (1st Cir.1969); *Fletcher v. Young,* 222 F.2d 222 (4th Cir.), *cert. denied,* 350 U.S. 916, 76 S.Ct. 201, 100 L.Ed. 802 (1955); *Moss v. Ward,* 434 F.Supp. 69 (S.D.N.Y.1977); *Carter v. Telectron, Inc.,* 452 F.Supp. 939 (S.D.Tex. 1976).

*Id.* at 972–73 (footnote omitted). *See also Marks v. Calendine,* 80 F.R.D. 24 (N.D.W.Va.1978) ($289 costs assessed against a "disposable monthly income" of $20 of the unsuccessful prisoner plaintiff).

The *Flint* court expressly declined to limit its holding to "exceptional cases where the claim is frivolous, malicious, or utterly without foundation." 651 F.2d at 973. The court made its holding in response to plaintiffs' argument that assessment of costs in such situations would hamper access to the courts, but concluded "when costs are assessed only in extreme or exceptional cases, those persons granted leave to proceed *in forma pauperis* have virtually 'nothing to lose and everything to

gain,' and the purpose of § 1915—*equal access* for the poor and the rich—is distorted." *Id.* (emphasis added) (footnote omitted). *See also Jones v. Bales*, 58 F.R.D. 453, 463 (N.D.Ga.1972), *aff'd per curiam*, 480 F.2d 805 (5th Cir.1973). The purpose expressed for the holding in *Flint* was to "assure that litigants will be required to assess the relative merits and risks of litigation before they proceed." 651 F.2d at 974.

Analogous reasoning was applied in assessing costs against indigent *in forma pauperis* prisoners in *Duhart v. Carlson*, 469 F.2d 471 (10th Cir.1972), *cert. denied sub nom. Long v. Carlson*, 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973). In approving imposition of costs in a proceeding deemed to be frivolous, the court discussed equal treatment and access to courts concluding that neither was persuasive. If a person "able to prepay the cost of an action has no constitutional right of access to the courts to prosecute an action that is frivolous," then neither did an indigent prisoner have such a right; both might have costs of such an action assessed against them. *Id.* at 478.

*Harris v. Forsyth*, 742 F.2d 1277 (11th Cir.1984), cited with approval by this court in *Sales*, adopted the rule expressed in *Flint* that a district court's assessment of costs against an *in forma pauperis* plaintiff under § 1915 was within the district court's sound discretion.

▆ We think it is clear, then, that a district court may assess costs against an unsuccessful *in forma pauperis* litigant whether or not the claim was frivolous or simply unmerited. *Sales*[1] is in conformity with a number of circuits in this regard. While a constitutional question was not raised in *Sales*, it construed § 1915 in accord with the plain and logical meaning of its language that costs may be assessed

against plaintiffs who did not prepay costs or fees "at the conclusion of the suit or other action as in other cases." 28 U.S.C. § 1915(e). Federal appellate decisions have so interpreted this statute for twenty years, particularly in conjunction with a consideration of such unsuccessful plaintiff's "capacity to pay the costs assessed." *Sales*, 873 F.2d at 120. We perceive no chilling effect during this period of this construction of the statute (nor since 1989 when *Sales* was decided) that has slowed the onslaught of prisoner filings of civil rights claims in federal courts without prepayment of costs, with the potential of later assessment upon unsuccessful conclusion of the case.

A constitutional challenge, accordingly, would not lie in our view on the application of § 1915(e) to assessment of costs against a prisoner who proceeded *in forma pauperis* in district court. We perceive no chilling effect and no basis for a first amendment claim as to this longstanding interpretation and application of § 1915.

▆ The benefit extended under this statute to file suit without prepayment of costs is a privilege, not a right. *Carter v. Thomas*, 527 F.2d 1332 (5th Cir.1976); *Startti v. United States*, 415 F.2d 1115 (5th Cir.1969); *Williams v. Field*, 394 F.2d 329 (9th Cir.1968), *cert. denied*, 393 U.S. 891, 89 S.Ct. 213, 21 L.Ed.2d 171 (1968). There is no demonstrated limitation upon the first amendment claim presented by plaintiffs under the circumstances of this case on the privilege granted them to proceed *in forma pauperis* subject to possible later imposition of costs under § 1915. There is no showing whatever that this application of the statute is directed against these plaintiffs to chill their privilege to bring suits and appeals without prepaying costs.[2] The cases cited by plain-

---

**1.** Judge Lively was the author of *Sales* and was also a member of the per curiam panel in *Evans v. Tennessee Dep't of Corrections*, 514 F.2d 283 (6th Cir.1975), a case which has not since been cited. *Evans* held, without citation of any published precedent, that where no bill of costs was filed by the prevailing defendants, there was no authority to permit recovery of a filing fee and

fees for service of process from an *in forma pauperis* plaintiff. *Evans* is not controlling here where a prevailing defendant seeks costs from an unsuccessful plaintiff under § 1915(e). The *Evans* rationale was that "costs are awarded to parties … not to court officials." *Id.* at 284.

**2.** *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), cited by plaintiffs,

tiffs, such as *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), that deal with denial of access to the courts *in the first instance* are clearly inapplicable here. Plaintiffs were simply not denied access to federal court, and whether or not they proceed originally in good faith is immaterial to the question of access. Their alleged "constitutional right to file a non-frivolous suit" was not precluded, nor was their right to pursue what they perceived to be a non-frivolous appeal abridged.

■ We have discussed at some length the application of § 1915 by imposition of costs against unsuccessful parties by the district court. The statute, subsection (a), refers to appeals taken *in forma pauperis* and requires that the trial court certify that it be "taken in good faith." Section 1915(e) on its face is not limited to district courts, and the statute begins with the language "[a]ny court of the United States," which, of course, would include circuit courts. We hold that § 1915(e) applies to assessment of costs against unsuccessful *in forma pauperis* plaintiffs (or appellants) in circuit courts as well as in district courts of the United States. Circuit courts under § 1915(e) may authorize commencement of an appeal without prepayment of costs; they may similarly, "within [their] sound discretion," assess costs against an appellant who has not been required to prepay costs of appeal. *Harris v. Forsyth,* 742 F.2d 1277, 1278 (11th Cir.1984). The holding in *Harris* was specifically *not* "limited to frivolous appeals," and we are of the same view.

■ Rule 39(a) of the Federal Rules of Appellate Procedure provides:

(a) **To Whom Allowed.** Except as otherwise provided by law, if an appeal is dismissed, costs shall be taxed against the appellant unless otherwise agreed by the parties or ordered by the court; if a judgment is affirmed, costs shall be taxed against the appellant *unless otherwise ordered;* if a judgment is reversed,

costs shall be taxed against the appellee *unless otherwise ordered;* if a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court.

(Emphasis added). In the section of the Code dealing with "taxation of costs," it is provided that

[A] judge or clerk of *any court* of the United States may tax as costs ... (1) fees of the clerk ... (3) fees and disbursements for printing; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; [and] (5) docket fees.

28 U.S.C. § 1920 (emphasis added). A successful party obtaining any form of relief on appeal may recover such costs on appeal under § 1920 from the other party. *Kemp v. Heckler,* 777 F.2d 414, 415 (8th Cir.1985). This statute clearly sets out that the clerk of the court may assess certain enumerated costs to the prevailing party, and this applies generally in civil rights cases as well as in other cases in favor of prevailing parties. *Lenard v. Argento,* 699 F.2d 874, 900 (7th Cir.), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983).

Federal Rule of Civil Procedure 54(d) is similar to § 1920, providing that unless "express provision" is otherwise made, "costs shall be allowed as of course to the prevailing party." "Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d). Thus, a dismissal of the action, whether on the merits or not, generally means the defendant is the prevailing party." 10 Wright & Miller, *Federal Practice and Procedure* § 2667.

■ We are also in accord with *Harris v. Forsyth* that "the *Flint* court's reasoning," with respect to the statutory basis for assessing costs against an indigent plaintiff, "would apply with equal force to costs under Rule 39(a)." 742 F.2d at 1278. We would reiterate our holding as to § 1920 and Rule 39(a), as in the case of costs

deals with repeated state prosecutions of plaintiffs for asserting purported federal constitutional rights and the "chilling effect on free

expression." *Dombrowski* is inappropriate to the circumstances here.

under § 1915(e), that imposition of costs on appeal against an unsuccessful *in forma pauperis* plaintiff does not deny plaintiffs access to the circuit court nor does it chill the first amendment rights of the unsuccessful plaintiff, who has proceeded on appeal without prepayment of costs.[3] This has been the rule at common law for centuries; "in actions at law prevailing parties were entitled to costs as of right." *Baez v. U.S. Dep't of Justice,* 684 F.2d 999, 1002 (D.C.Cir.1982).[4] Rule 54(d) adopts the common law principle as to imposition of costs against the unsuccessful party "as a matter of course," *Baez,* 684 F.2d at 1004, and a "normal incident of defeat" *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981). The standard presumption and usual course of awarding costs to the prevailing parties, such as defendants here, applies equally under Appellate Rule 39(a) as in cases under Fed.R.Civ.P. 54(d). *Baez,* 684 F.2d at 1004. Notes of the Advisory Committee on appellate rules dealing with Rule 39(a) refers to statutory authorization, 28 U.S.C. § .1920, and to the fact that the subsection provisions "follow the usual practice in the circuits." *See also* 9 Moore, *Federal Practice and Procedure* § 239.01[1] at 39–6 (2d ed. 1976); *Delta Air Lines, Inc. v. C.A.B.,* 505 F.2d 386 (D.C.Cir.1974).

The dissent maintains that the law in question, although "if literally read … supports the conclusion that, in general, the taxing of costs against unsuccessful appellants is within the district court's discretion," rests on "wholly irrelevant" grounds to "achievement of any governmental objective," citing *Ledesma v. Block,* 825 F.2d 1046, 1051 (6th Cir.1987), and *United States v. Luster,* 889 F.2d 1523,

1530 (6th Cir.1989) (legislation with "disparate impact" on the indigent requires "more searching inquiry than requiring a mere rational relationship"). In *Ledesma,* however, Judge Engel held that a Michigan law, denying food stamps to households of a striking employee despite plaintiff's attack that focused on the disparate and heavy impact of this law upon the impecunious striker's family, passed constitutional muster. The decision made reference to "good social arguments" to the contrary, but concluded, nevertheless, that "Congress has the power to make other choices," finding a reasonable basis for the "classification involved." 825 F.2d at 1051.

The dissent in this case similarly presents policy and social arguments against giving the courts discretion to impose costs upon *in forma pauperis* plaintiffs who were permitted to proceed into federal courts without any advance deposit of costs and were ultimately found to have no legal or constitutional merit in their claims.

Our brother Jones cites several Supreme Court cases that found state law requirements of a deposit of advance costs or bonds of poor parties seeking election or relief to be a denial of equal protection. We have no quarrel with *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), or *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), but they are not relevant to the issue in this case. No advance payment of costs were required of—or other impediment imposed

---

**3.** With regard to the access to the courts argument, we agree with the following statement from *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir.), *cert. denied,* 493 U.S. 863, 110 S.Ct. 180, 107 L.Ed.2d 135 (1989):

Reasonable access to the courts is provided to indigent claimants by the *in forma pauperis* (IFP) statute, 28 U.S.C. sec. 1915 *et seq.,* which allows commencement of suits without payment of fees and court costs by a person who makes an affidavit that he is unable to pay the costs. Still, once a *pro se* IFP litigant is in

court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.

**4.** *Baez* amplifies this common law "American rule" as recognizing "a strong presumption favoring cost awards to prevailing litigants," citing a number of authorities. *Id.* at 1002. Costs, it points out, usually are "small and predictable" and they are "necessary and reasonable incidents" of litigation properly reimbursable to the victors. *Baez,* 684 F.2d at 1003.

in filing upon—plaintiffs by the district court or by this appellate court. The law, in effect, recognized the principle of these cases and gave the *in forma pauperis* plaintiffs a benefit denied to the other parties who are required to pay costs and/or post cost bonds in order to file § 1983 claims or appeal from adverse district court determinations. The dissent ignores a recent prior decision of this court, *Sales v. Marshall*, 873 F.2d 115 (6th Cir.1989),[5] reaching the same result we have reached that a district court could reasonably and validly, in its discretion, tax costs against an indigent plaintiff in a civil rights case of this kind after unsuccessful prosecution of a claim.

We emphasize what was stated in *Matter of Penn Central Transp. Co.*, 630 F.2d 183, 188 (3d Cir.1980): "[o]ur discretion [should be] governed by the general rule that costs are taxed in favor of prevailing parties and against losing parties," whether or not they have been privileged to proceed previously in district court and on appeal without prepayment of costs.

### B. *Due Process*

 Plaintiffs' brief makes reference to this issue as "the Fifth Amendment Due Process right of access to the courts." They cite no authority for the proposition that assessment of costs under the statute or a rule against an unsuccessful *in forma pauperis* prisoner *after* he or she has had a full opportunity to litigate a claim in court violates a due process right. Indeed, in this case we have afforded the plaintiffs' counsel, at no cost to them, to bring forward any legal challenge to the imposition of costs against them after an unsuccessful appeal. Our discussion about the historic rationale of assessing costs in favor of the prevailing party against the unsuccessful party as the normal and usual course in the above section adequately deals with the due process argument advanced. There is a rational basis for this longstanding rule of law.

We have found a rational basis both for the statute in controversy and the rules giving courts discretion to impose costs against indigent and unsuccessful litigants. The dissent notes one purported objective for imposing costs—"prevention of frivolous litigation by inmates," but finds this basis to be "spurious" as a "docket-control mechanism," suggesting other means to handle frivolous litigation. This supposed objective given by the dissent really sets up a straw man to be knocked over by his alternative means of handling arguments. It is clear that district courts may dismiss and assess costs in cases found to be frivolous under 28 U.S.C. § 1915(d). We do not deal in this appeal with a case determined to be frivolous, although this court may also dismiss, or decline, at the outset, a frivolous appeal brought by a pro se litigant.

Nor do we decide this case on any basis of deterring the bringing of non-frivolous § 1983 cases by *in forma pauperis* prisoners as inferred by the dissent. We have no intent whatever to bring this about, nor is any consequence of our decision, "an affront to the intent of Congress" in enacting § 1983. We merely decide that it violates no First Amendment nor Fourteenth Amendment rights to "assure that litigants will be required to assess the relative merits and risks" before they proceed in pursuing an appeal. *See Flint v. Haynes*, 651 F.2d 970, 972–73 (4th Cir.1981). Congress, in enacting this legislation and in approving the rules, merely adopted the ancient principle that an unsuccessful litigant might, in the discretion of the court, be called upon to reimburse costs of an appeal found to be without merit.

### II. *EQUAL PROTECTION*

 We reiterate our holding in *Sales v. Marshall*, 873 F.2d 115 (6th Cir.1989), that costs may be assessed in this court's discretion in a civil rights action against an *in forma pauperis* prisoner-litigant, one occupying the same status and "class" as the

---

5. Nor is there any reference by the dissent to the cases relied upon in *Sales v. Marshall,* which we discuss in some detail.

plaintiff in the instant appeal. *Flint v. Haynes*, 651 F.2d 970 (4th Cir.1981), similarly involved prisoner litigants setting out a purported § 1983 claim against state prison officials, as did *Marks v. Calendine*, 80 F.R.D. 24 (N.D.Va.1978). *See also Lumbert v. Illinois Dep't of Corrections*, 827 F.2d 257 (7th Cir.1987); *Collier v. Tatum*, 722 F.2d 653 (11th Cir.1983) (partial filing fees may be required of prisoners "in an attempt to handle the flood of pro se § 1983 prisoner actions now in federal court ... to force the prisoner 'to confront the initial dilemma which faces most other civil litigants: is the merit of the claim worth the cost of pursuing it?'" (citing *Braden v. Estelle*, 428 F.Supp. 595, 596 (S.D.Tex.1977))).

Federal courts have gone to great lengths to be open to pro se indigent prisoners, state and federal.[6] In *Smith v. Bennett*, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), the Supreme Court struck down a state statute requiring an indigent prisoner to prepay a fee to pursue a habeas corpus application, holding that the statute violates constitutional equal protection requirements. The basis of *Smith* was the requirement of *prepaying* costs or a filing fee, an entirely different situation from the case at hand. *Smith*, relied upon by plaintiffs, also involved what was described several times in that decision as the "Great Writ," a matter with which we are not concerned in this case. Neither § 1915(e) nor § 1920 is legislation directed against any specific class, prisoner, indigent, nor pro se party. Section 1915(a), on the other hand, provides for initial free access to the federal courts to any party "who makes affidavit that he is unable to pay such costs or give security therefor." Section 1915(a) enabled plaintiffs to proceed as it does all indigent prisoners who swear that they cannot prepay these costs.

The effort of successful defendants to "recoup monetary losses by [them] as a result of defending against the unsuccessful appeal" in this case is not a denial of equal protection in any sense. There is no

evidence that ultimate assessment of limited and reasonable costs in favor of the successful defendant against an *in forma pauperis* prisoner, as has been the established law in other circuits for a number of years, would "preclude indigent persons from bringing meritorious actions." Plaintiffs' Brief at 8.

When successful in appeals pursued against Michigan prison officials by state prisoners, the Michigan Attorney General has sought to recoup its costs in a number of cases. (As of March 13, 1991, in approximately fifty-three cases in our court). In some cases the application for reimbursement of costs, usually about $60–$75, has been denied; in some others, it was granted in full or in part. There is no indication that defendants pursued this remedy to discriminate against these particular parties, or because of their race, sex, religion, or national origin—or even the specific prisons occupied by them.

Plaintiffs are Michigan prisoners with relatively small prison account balances. The state, because of plaintiffs' past crimes, provides for their housing, food, living expenses, medical and dental care, and other necessaries, including access to a law library and some minimal assistance in filing suits. Other *in forma pauperis* plaintiffs may be poverty stricken, disabled, handicapped, or otherwise suffering from an ability to compete realistically on equal economic terms with defendants against whom they may purport to have civil rights claims. We perceive no demonstrated basis to treat imprisoned *in forma pauperis* litigants in a different fashion than other *in forma pauperis* litigants who may seek, without prepayment of costs, to vindicate civil rights (or other) claims against state officials or others. In sum, we conclude that the court's action in assessing costs does not offend any claimed equal protection rights of the plaintiffs.

---

**6.** *See, e.g., Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Flint v. Haynes*, 651 F.2d 970, 974 (4th Cir.1981); *Spears v. United States*, 266 F.Supp. 22, 26 (S.D.W.Va. 1967).

Finally, our requirement of a showing of discriminatory intent on the part of Michigan is in accord with the requirements in Eighth Amendment cases involving prisoner claims under § 1983. *See Wilson v. Seiter, et al.,* — U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The statute and the rule which we uphold have been in effect for many years. They are "rationally related" to a "legitimate interest" of the Congress to ensure equal treatment of litigants in federal courts. That this interpretation of the plain language involved may require careful consideration by an indigent prisoner before proceeding, without prepayment of any costs on appeal, is not an affront to the prisoner nor requiring something "unattainable."

We simply find, in short, no constitutional bases for a rule barring the collection of costs from indigent prisoners.

### III. *REASONABLE COSTS— ABILITY TO PAY*

We have held that "this court requires a determination of ... capacity to pay the costs assessed" where "indigency" is claimed by the unsuccessful party against whom costs are to be assessed under 28 U.S.C. § 1915(e). *Sales v. Marshall,* 873 F.2d 115, 120 (6th Cir.1989). This holding was addressed to the district court's order on appeal which had assessed costs against a prisoner-litigant.

Other courts have held that in determining whether to grant indigent status to a prisoner-plaintiff, the district court may "inquire whether, if a prisoner has no cash credit at the moment of filing, he had disabled himself by a recent drawing on his account and if so, for what purposes." *Evans v. Croom,* 650 F.2d 521, 525 (4th Cir.1981) (quoting *In re Stump,* 449 F.2d 1297, 1298 (1st Cir.1971)), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982). *See Carter v. Telectron, Inc.,* 452 F.Supp. 939, 942 (S.D.Tex. 1976) (court is not bound by plaintiff's economic status at time of filing, but should take into account all relevant changes prior to and subsequent to filing of suit), *modified,* 554 F.2d 1369 (5th

Cir.1977). Where decreases in a prisoner's account are considered, courts have required that the prisoner be given a reasonable opportunity to explain withdrawals from his account.

*Collier v. Tatum,* 722 F.2d 653, 655 (11th Cir.1983).

■■■■■ If a court may inquire properly into the status of a prisoner's account and ability to prepay costs in whole or in part, in order to determine whether that prisoner should be permitted to proceed *in forma pauperis,* then, logically, it is also appropriate to make such inquiry with respect to "capacity to pay the costs assessed" by this court. "Courts have looked to both a prisoner's trust account balance and his income in establishing the amount of payment. *See, e.g., Smith v. Martinez,* 706 F.2d 572 (5th Cir.1983)." *Collier,* 722 F.2d at 656 (omitting other cases cited). We also agree with the *Collier* holding that a district court in such a case may look to such factors as the "purpose of the rule," "the litigation history" of the party, "good faith," and "the actual dollars involved." *Id.* at 657. *See also Lumbert v. Illinois Dep't of Corrections,* 827 F.2d 257 (7th Cir.1987). The court involved, of course, may exercise its discretion not to impose costs against an indigent or an unsuccessful *in forma pauperis* party. *Harris v. Forsyth,* 742 F.2d at 1278 (citing *Flint,* 651 F.2d at 972 n. 5). (*Harris,* for example, approved assessing costs against an *in forma pauperis* party of $38.00 for printing copies of appellees' brief.) *See also Lay v. Anderson,* 837 F.2d 231 (5th Cir.1988) (affirming district court's assessment of costs against a pro se, *in forma pauperis* prisoner with an order that "as funds accumulate in appellant's prison account ... or he receives any other source of assets or income, the appropriate prison officials are ordered to withdraw such amount from such prison account ... and forward it to the Clerk of the Court").

We have affirmed a district court's assessment of costs against a purported indigent plaintiff under Fed.R.Civ.P. 54(d) despite the unsuccessful civil rights plaintiff's claim that this "would conflict with

the remedial purposes" of the Civil Rights Act relied upon. *Jones v. Continental Corp.*, 789 F.2d 1225, 1233 (6th Cir.1986). This court noted no citation of any case reversing such an award as it was a matter of the district court's discretion. *Id.* We did note in *Jones,* however, that the district court had reviewed Jones' affidavit and found "sufficient assets to take out a loan to pay the judgment" costs. *Id.* Again, we find an analogy between assessment of costs under Fed.R.Civ.P. 54(d) and Fed.R.App.P. 39(a). In *In re Ruben*, 825 F.2d 977, 987 (6th Cir.1987), *cert. denied sub nom. Swan v. Ruben,* 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988), we remanded an issue of assessment of costs in a similar type of case against an unsuccessful plaintiff "for a determination of whether Rathbun is capable of paying the rather sizeable costs ... [because] district judges are encouraged to consider the question of indigency fully for the record."

■■■ We conclude from this discussion of authority that this court does have the authority to assess reasonable costs under 28 U.S.C. § 1915(e) or § 1920 and Rule 39(a) against unsuccessful *in forma pauperis* plaintiffs even if their claims are not deemed frivolous, malicious, or vexatious. This authority to assess reasonable costs is within the sound discretion of the court but is subject to a prompt challenge and showing by such prisoner-plaintiffs that they are incapable, as a practical matter and as a matter of equity, of paying such costs. The burden is upon the prisoner-plaintiffs to make such a showing in order to gain relief, or partial relief, from such assessment and subsequent efforts to collect such costs awarded to the successful defendants. *Gardner v. Southern Ry. Sys.*, 675 F.2d 949 (7th Cir.1982).

■■■ Since this court is not equipped to deal with a hearing on the question of relief, or partial relief, or extension of time for payment of costs in the case of *in forma pauperis* prisoner-plaintiffs against whom an assessment of costs has been made, we direct a remand in this case to Magistrate Joseph G. Scoville, the judicial officer who originally permitted plaintiffs to proceed *in forma pauperis,* to ascertain whether plaintiffs, or any of them, may establish entitlement to relief from collection of the costs herein assessed, considering the factors set forth in *Collier v. Tatum,* 722 F.2d 653 (11th Cir.1983); *Smith v. Martinez,* 706 F.2d 572 (5th Cir.1983); *Sales v. Marshall,* 873 F.2d 115 (6th Cir. 1989), and other authorities herein considered.

## IV. GARNISHMENT AND EXECUTION UNDER MICHIGAN LAW

The manner in which money is withdrawn from a Michigan prisoner's account in order to satisfy a court order for costs against an inmate is provided by Michigan law. 1987 A.A.C.S. Rule 791.6639 states:

(8) Funds shall not be taken from a prisoner account, except at a prisoner's request, unless justification is first established at a hearing pursuant to R. 791.-3315, except pursuant to the provision of R. 791.5505 or an order of a court.

Plaintiffs contend that Article X, § 3[7] of the Michigan Constitution exempts plaintiffs' personal property in this case from execution upon any judgment for costs imposed by this court. They argue further that 15 U.S.C. § 1601, *et seq.,* the Consumer Credit Protection Act, applies to limit to twenty-five per cent of their per week earnings any garnishment levied against them by defendants to collect the costs assessed. These contentions are properly considered in the first instance by the district court, if and when the magistrate determines that plaintiffs, or any of them, are capable of paying the costs in controversy, or any portion of them. We, therefore, make no determination of this issue which arises when collection efforts are instituted or

---

7. Homestead and personalty, exemption from process. SEC. 3. A homestead in the amount of not less than $3,500 and personal property of every resident of this state in the amount of not less than $750, as defined by law, shall be ex-empt from forced sale on execution or other process of any court. Such exemption shall not extend to any lien thereon excluded from exemption by law.

utilized by defendants, whether by execution, garnishment, or otherwise. Instead, we remand these questions to the district court after Magistrate Scoville has made his decision on remand concerning plaintiffs' reasonable ability to bear the costs in controversy.

In sum, we find that plaintiffs have shown no constitutional violation in the assessment of reasonable costs against them in the discretion of this court. We RE-MAND to the magistrate the question of the capacity of any or all of the plaintiffs to pay, in whole or in part, over an extended period if necessary, the costs in controversy, taking into account all pertinent circumstances bearing upon their ability to pay and overriding equitable considerations, if any. We REMAND to the district court, as it may become necessary, to decide the Michigan law and federal law questions raised by plaintiffs concerning execution or garnishment upon their prisoner accounts, earnings, or other assets, if any.

NATHANIEL R. JONES, Circuit Judge, dissenting.

The majority perceives no constitutional problem to the imposition of costs against non-frivolous appeals brought by indigent prisoners. In my view, however, the recoupment of costs from these indigent inmates is not rationally related to the achievement of any valid government purpose. Thus, I would find that, as applied to this case, the imposition of costs violates the plaintiffs' equal protection rights. I respectfully dissent.

The plaintiffs filed their complaint because prison officials intercepted and confiscated legal materials mailed by two of the plaintiffs to the third plaintiff. The district court dismissed the suit because the court found that the state may constitutionally impose time and place restrictions on inmate-to-inmate legal correspondence. After an unsuccessful appeal, the state of Michigan requested that the costs of the appeal—$128.00—be taxed to plaintiffs. It is undisputed that plaintiffs have no assets other than the amounts in their

prison accounts: $2.46 for Weaver, $0.94 for McKaye, and $35.70 for Martin.

Equal protection challenges to statutes, assuming neither a fundamental right nor suspect classification is involved, are usually evaluated under a rational basis test. "Under the rational basis test, a statutory classification violates the Equal Protection Clause if it 'rests on grounds wholly irrelevant to the achievement of [any governmental] objective.'" *Ledesma v. Block,* 825 F.2d 1046, 1051 (6th Cir.1987). However, "legislation which has a disparate impact on the indigent defendant should be subject to a more searching scrutiny than requiring a mere rational relationship." *United States v. Luster,* 889 F.2d 1523, 1530 (6th Cir.1989). *See also Bullock v. Carter,* 405 U.S. 134, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972) (state law requiring all candidates for public office to pay large filing fee must be "'closely scrutinized' and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster."). Moreover, the U.S. Supreme Court has stated that "to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws." *Smith v. Bennett,* 365 U.S. 708, 709, 81 S.Ct. 895, 896, 6 L.Ed.2d 39 (1961) (striking down state law requiring filing fees by indigent state prisoners filing habeas corpus petitions); *Bounds v. Smith,* 430 U.S. 817, 821, 824, 97 S.Ct. 1491, 1494, 1496, 52 L.Ed.2d 72 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts.... [O]ur decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts.").

Michigan's objectives in imposing costs against these plaintiffs are twofold: the prevention of frivolous litigation by inmates; and recoupment of monetary losses suffered by appellees. The U.S. Supreme Court, however, has already held that deterring frivolous litigation does not justify imposing costs on the exercise of a constitutional right. *Boddie v. Connecticut,* 401

U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In *Boddie*, welfare recipients attempting to sue for divorce challenged a state law requiring the prepayment of court fees and costs. The Court held that denying the welfare recipients the right to divorce solely because they lacked the ability to prepay costs was a denial of due process. *Id.* at 380–81, 91 S.Ct. at 787–88. The Court rejected the justification of deterring frivolous lawsuits:

> Not only is there no necessary connection between a litigant's assets and the seriousness of his motives in bringing suit, but it is here beyond present dispute that appellants bring these actions in good faith. Moreover, other alternatives exist to fees and cost requirements as a means for conserving the time of courts and protecting parties from frivolous litigation, such as penalties for false pleadings or affidavits and actions for ... abuse of process, to mention only a few.

*Boddie*, 401 U.S. at 381–82, 91 S.Ct. at 787–88.

In *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), tenants being prosecuted under the Oregon Forcible Entry and Wrongful Detainer Statute (FED) were required to post twice the amount of rent expected to accrue during the appeal. The Supreme Court found this double-bond requirement to be a violation of the equal protection clause. The Court found "no reasonable relationship" between the double-bond requirement and any valid state objective:

> It cannot be denied that the double-bond requirement heavily burdens the statutory right of an FED defendant to appeal.... The claim that the double-bond requirement operates to screen out frivolous appeals is unpersuasive, for it not only bars nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond.
>
> \* \* \* \* \* \*
>
> The discrimination against the poor, who could pay their rent pending an appeal but cannot post the double bond, is particularly obvious. For them, as a prac-

tical matter, appeal is foreclosed, no matter how meritorious their case may be. *Lindsey v. Normet*, 405 U.S. at 77–79, 92 S.Ct. at 876–879.

As a policy matter, the notion that costs must be imposed against indigent inmates as a docket-control mechanism is a spurious one. District courts are not without means to cope with what the majority terms "the onslaught of prisoner filings of civil rights claims in federal courts[.]" The liberal summary judgment standard employed in federal courts permits district courts to dispose of many section 1983 prisoner suits. Moreover, 28 U.S.C. § 1915(d) expressly permits the district court to dismiss any *in forma pauperis* suit "if satisfied that the action is frivolous or malicious." On appeal, this Circuit has adopted an expedited procedure whereby many prisoners' suits are disposed of without oral argument or a detailed opinion. Thus, in my view, federal courts are perfectly capable of managing their dockets without resort to such artificial means as ordering an indigent inmate to pay costs.

To assert that prisoners' section 1983 suits must be "deterred" in order to save courts the bother is an affront to both the intent of Congress in passing section 1983 and the constitutional rights of prisoners. The near-total control which the state must necessarily exercise over inmates makes prisons places of conflict and tension. In such an environment, prisoners' rights under our Constitution must be protected. Section 1983 allows prisoners a vehicle through which they can receive redress for proven constitutional violations. By adopting mechanisms designed to deter prisoners' suits, we endanger one of our few windows into the conduct of state and federal prison authorities. At the very least, these suits provide a safety release for pent-up frustrations which germinate inside a prison. If prisoners have a legal outlet for their complaints, they are less likely to resort to illegal means to vent frustrations. In sum, I would find that deterring prisoners' section 1983 suits is not a valid state objective under equal protection analysis.

In addition, cost recoupment is not a rational goal because the amount involved—$128.00—does not justify a full-blown appeal in terms of cost effectiveness. The Supreme Court in *Boddie* also rejected the use of a prepayment of costs requirement "as a mechanism of resource allocation or cost recoupment." 401 U.S. at 381, 91 S.Ct. at 788. As counsel for appellees conceded at oral argument, the expenses associated with the collection of costs against *in forma pauperis* inmates may exceed the amount ultimately recovered.

The majority concludes that plaintiffs' equal protection rights have not been violated because "[t]here is no evidence" that imposition of costs prevents indigent prisoners from filing suit, and because "[t]here is no indication that defendants pursued this remedy to discriminate against these particular parties[.]" Maj. op. at 1012. In my view, this approach raises the standard of proof to an unattainable level. It is difficult to imagine how these plaintiffs are expected to prove that some prisoners have not filed claims because costs may be imposed. Similarly, evidence of a discriminatory intent on the part of the state of Michigan would be equally difficult to produce.

Requiring this type of proof conceals a veiled contempt for prisoner suits of any stripe. Furthermore, the dismissal of plaintiffs' equal protection claim for failure to meet the majority's evidentiary threshold obscures the correct equal protection analysis this court is obliged to employ. "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). As discussed above, the state's interest in imposing costs against indigent appellants, in my view, is so attenuated as to fail even rational basis scrutiny.

The majority also seeks to make its holding more palatable by obscuring the line between *in forma pauperis* plaintiffs who are prisoners and other *in forma pauperis* plaintiffs. Remarkably, the majority even implies that indigent prisoners have an advantage over other *in forma pauperis* plaintiffs in that prisoners have "access to a law library and some minimal assistance in filing suit." Maj. op. at 1012. The "minimal assistance" provided by prisons to prisoners in filing suits is totally irrelevant to the merits of this equal protection claim. However, since the majority appears to be haunted by the image of the feckless prisoner bombarding our courts with worthless lawsuits, all with the connivance of prison authorities, may I remind the majority that this case initially resulted from *restrictions* placed on inmate legal correspondence. On a more fundamental level, indigent inmates differ from the overall class of *in forma pauperis* litigants because the state is under a continuing duty to confine inmates under conditions which pass constitutional muster. Civil rights suits by prisoners also serve an important function in our criminal justice system by drawing attention to unconstitutional conditions. If prisoners do not bring section 1983 suits, then prison officials are essentially unaccountable. One need only consider the example of Clarence Earl Gideon, the *in forma pauperis* plaintiff in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), to realize the crucial role prisoners' suits play in the protection of constitutional rights.

The United States, with over one million of its citizens behind bars, now has the highest percentage of its population incarcerated of any country in the world. N.Y. Times, Jan. 7, 1991, at 14, col. 1. During the past decade, the nation's prison population has doubled although the crime rate has dropped 3.5%. *Id.* If the depressing problems associated with crime are to be addressed through expanding the prison population, then the federal courts must ensure that the ability of prisoners to bring constitutional claims is not hindered.

I recognize that a literal reading of Fed. R.App.P. 39(a) and 28 U.S.C. § 1915(a) supports the conclusion that, in general, the taxing of costs against unsuccessful appellants is within the district court's discretion. As applied to inmates proceeding *in*

*forma pauperis,* however, I would find that there is no reasonable relationship between the taxing of costs and a valid state objective. Moreover, as a practical matter, imposing costs against indigent inmates would appear to largely be an exercise in futility. *See Harris v. Forsyth,* 742 F.2d 1277, 1277 (11th Cir.1984) ("No case has been found which has awarded costs under Rule 39(a) against an appellant proceeding in forma pauperis.").

Nevertheless, the majority remands this case back to the district court for resolution of the issues of ability to pay issue, and garnishment and execution under both federal and state law. Given the impecunious state of these defendants—one has only ninety-four cents in his prison account—the resolution of this issue should not be complicated. A rule barring the collection of costs from indigent prisoners would ensure that no impediments existed to a prisoner bringing to light constitutional violations, and would also effect the goal of resolving prisoners' claims in a timely fashion and lowering the workload of the courts.