**Lee HAMPTON, Plaintiff–Appellant,**

v.

**Ron HOBBS, Defendant–Appellee.**

No. 96–3524.

United States Court of Appeals,
Sixth Circuit.

Feb. 13, 1997.

Michael I. Kanovitz, Stites & Harbison, Louisville, KY, Eric M. Jaegers (argued and briefed), Louisville, KY, for Lee Hampton.

Lee Hampton, Orient, OH, pro se.

Todd R. Marti (argued and briefed), Office of the Attorney General, Corrections Litigation Section, Columbus, OH, for Ron Hobbs.

Jacob M. Lewis (argued), Richard A. Olderman (briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Washington, DC, for U.S.

Before: MARTIN, Chief Judge; ENGEL and COLE, Circuit Judges.

BOYCE F. MARTIN, Jr., Chief Judge.

Lee Hampton, a prisoner, initiated a 42 U.S.C. § 1983 suit alleging deprivation of a constitutionally protected liberty interest and retaliation for exercising his First Amendment rights. The district court granted summary judgment to the defendant and dismissed the case. Hampton filed a timely notice of appeal from that order and subsequently filed a motion with this Court to proceed in forma pauperis. This Court raised several issues regarding the constitutionality of the fee requirements of the Prison Litigation Reform Act, Pub.L.No. 104–134, §§ 801–10, 110 Stat. 1321 (1996) (amending in forma pauperis provisions of 28 U.S.C. § 1915), and appointed counsel to address the following matters:

(1) Whether the filing fee requirements of 28 U.S.C.A. § 1915 violate a prisoner's right of access to the courts.

(2) Whether the filing fee requirements of 28 U.S.C.A. § 1915 violate a prisoner's First Amendment rights.

(3) Whether the filing fee requirements of 28 U.S.C.A. § 1915 violate a prisoner's Fifth Amendment guarantee of Equal Protection.

(4) Whether the filing fee requirements of 28 U.S.C.A. § 1915 violate a prisoner's Fifth Amendment right to Due Process.

(5) Whether the filing fee requirements of 28 U.S.C. § 1915 violate the Double Jeopardy Clause of the United States Constitution.

Hampton's fee status was held in abeyance pending the outcome of this appeal.

The merits of Hampton's suit are not before us today. The sole issue for us to consider concerns the constitutionality of the Prison Litigation Reform Act's fee provisions, and the facts upon which Hampton's action is based are not germane to the resolution of that issue. Accordingly, a sketch of the relevant provisions of the Act is the only background necessary.

Section 1915(a)(2) requires that "a prisoner seeking to bring a civil action or appeal a judgment in a civil action without prepayment of fees" must: (1) file an affidavit stat-

ing the prisoner's assets and that the prisoner is unable to pay such fees or give security therefor, and (2) submit a certified copy of the prisoner's trust fund account statement for the six-month period preceding the filing of the complaint or notice of appeal. 28 U.S.C.A. § 1915(a)(2). Section 1915(b)(1) provides the following:

> Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of the filing fee. The court shall assess and, when funds exist, collect, as partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—

> (A) the average monthly deposits to the prisoner's account; or

> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C.A. § 1915(b)(1). Thus, although all prisoners are required to pay an initial partial filing fee, payment of this fee is made only when funds exist. After payment of the initial partial filing fee, the prisoner must make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account, but payments will be extracted only in months when the prisoner's trust fund account exceeds ten dollars ($10). 28 U.S.C.A. § 1915(b)(3).

Despite the requirements of the aforementioned sections, section 1915(b)(4) provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C.A. § 1915(b)(4). The Act's fee requirements are further tempered by section 1915(f)(1), which allows judgment to be rendered for costs at the conclusion of the suit. Thus, prisoners can recoup their costs if their claim is successful. Moreover, the Act does not affect an inmate's ability to seek relief in state court or through state grievance procedures.

## I. Right of Access to the Courts

While the constitutional source of the right of access to the courts is somewhat nebulous, "the parameters of the doctrine are relatively clear." *Knop v. Johnson,* 977 F.2d 996, 1003 (6th Cir.1992), *cert. denied,* 507 U.S. 973, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993). "Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974) (citing *Ex Parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941)). " '[M]eaningful access' to the courts is the touchstone," *Bounds v. Smith,* 430 U.S. 817, 823, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977) (quoting *Ross v. Moffitt,* 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974)), and courts must determine whether "inmate access to the courts is adequate, effective, and meaningful," *Id.* at 822, 97 S.Ct. at 1495. *See also Lewis v. Casey,* —— U.S. ——, ——, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996).

The fee requirements placed on prisoners under the Prison Litigation Reform Act do not deprive them of adequate, effective, and meaningful access to the courts. While the amendments to section 1915 require the prisoner to pay an initial partial filing fee and monthly payments thereafter, those requirements are tempered significantly by the other provisions of the Act. The Act requires a court to collect the initial fee only when "funds exist." Therefore, a prisoner without funds will not be denied access to a federal court based on his poverty. Congress made this point explicit in subsection (b)(4) of the statute, which provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4).

Moreover, once the initial filing fee is paid, the payments are slight. The Act requires a prisoner to pay the monthly charge of 20 percent of his preceding month's income only if the account exceeds ten dollars ($10). If the prisoner has less than ten dollars ($10) in

his account, no payment is required for that month. 28 U.S.C.A. § 1915(b)(2). Furthermore, if a prisoner is successful in his suit, the Act allows judgment to be rendered for costs, which could return any funds remitted to the court by the prisoner and absolve him of any future payments.

Although no evidence has been provided concerning the hardship to prisoners subjected to this Act, Hampton has not argued that he, nor prisoners in general, would be unable to afford a fee assessed under the Act. In fact, the Act and a prisoner's lack of other significant expenses support the United States' assertion that the fee provisions will not result in any real hardship above that faced by the average citizen considering whether to bring a lawsuit. Indeed, when the time for a payment arises under the Act, the amount due from a prisoner is based on a fraction of a prisoner's assets. Moreover, it is important to note that prisoners are in the custody of the state and have the "essentials of life" provided at government expense. *Evans v. Croom,* 650 F.2d 521, 523 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982) ("A prisoner is assured of the necessities of life, housing, food, clothing and medical care at state expense. His financial needs are thus not similar to those of a person in ordinary life."). Accordingly, the burden placed on prisoners by the fee requirements is slight and does not preclude adequate, effective, and meaningful access to the courts.

This conclusion is further bolstered by the fact that prisoners asserting civil claims in federal court have never been guaranteed a "free ride." We have previously upheld the constitutionality of assessments of costs against indigent prisoners. In *Weaver v. Toombs,* 948 F.2d 1004 (6th Cir.1991)—a 42 U.S.C. § 1983 action alleging deprivation of various constitutional rights—we addressed indigent prisoners' claim that an order taxing costs in the amount of $128 and allowing the costs to be satisfied by direct resort to plaintiffs' prison accounts violated the prisoners' right of access to the courts, equal protection, and due process. Although the Prison Litigation Reform Act overrules the procedural aspects of *Weaver,* our constitutional analysis of the imposition of costs in that case remains instructive. We upheld the constitutionality of the assessment and found, as to the prisoners' access claim:

> Plaintiffs were simply not denied access to federal court, and whether or not they proceed originally in good faith is immaterial to the question of access. Their alleged "constitutional right to file a non-frivolous suit" was not precluded, nor was their right to pursue what they perceived to be a non-frivolous appeal abridged.

*Id.* at 1009. We noted that the possibility that such costs will be imposed on prisoners "'assure[s] that litigants will be required to assess the relative merits and risks of litigation before they proceed.'" *Id.* at 1008 (quoting *Flint v. Haynes,* 651 F.2d 970, 974 (4th Cir.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982)). This same rationale is just as applicable to the present case and is echoed throughout the legislative history of the Act.

The Fourth Circuit, in *Evans,* addressed a claim challenging fee requirements similar to those in the Prison Litigation Reform Act. The Fourth Circuit upheld a district court order permitting tentative filing of any civil rights action by a state prisoner whenever the affidavit in support of a *pro forma pauperis* motion declared that the prisoner had less than the statutory filing fee in his trust fund account, but requiring that the prisoner pay a partial filing fee equivalent to a maximum of 15 percent of the income received within a six-month period preceding filing of the complaint. In finding the rule permissible, the Fourth Circuit noted the increasing problem of frivolous prisoner litigation and assessed the reasonableness of the requirement as follows:

> [T]here is nothing unreasonable in requiring [a prisoner], as well as any other plaintiff, to make some contribution, however minimal, to ask him ... "to some small degree to 'put his money where his mouth is,' it being all too easy (for him) to file suits, even with sufficient pro forma allegations, if it costs nothing whatever to do so." Such a requirement imposed "to curb the indiscriminate filing of (meritless) prisoner civil rights actions" is simply forcing the

prisoner "to 'confront the initial dilemma which faces most other potential civil litigants: is the merit of the claim worth the cost of pursuing it?' "

*Id.* at 524 (footnote and citations omitted). With the Prison Litigation Reform Act, Congress, armed with the same rationale, adopted a similar scheme to address the problem of frivolous prisoner litigation. Thus, *Weaver* and *Evans* demonstrate that the Act's fee requirements are similar to prior burdens courts have imposed—and upheld—on indigent prisoners.

Accordingly, we find that the fee provisions of the Prison Litigation Reform Act do not deprive prisoners of their right of access to the courts.

## II. First Amendment

■■■ Hampton further contends that the fee requirements violate his First Amendment rights by restricting his ability to engage in the expressive conduct of litigation. As the previous section explains, however, the Act does not restrict a prisoner's access to the courts. Thus, a prisoner's right to express himself through litigation has not been denied; a prisoner still has access to the federal courts, as well as to state courts and to administrative remedies. Moreover, Congress's refusal to subsidize a prisoner's exercise of his First Amendment rights does not constitute a violation of those rights. *See Regan v. Taxation With Representation,* 461 U.S. 540, 545–46, 103 S.Ct. 1997, 2000–01, 76 L.Ed.2d 129 (1983) ("Congress has not infringed any First Amendment rights or regulated any First Amendment activity. Congress has simply chosen not to pay for TWR's lobbying."). Accordingly, we find that the Act does not violate a prisoner's First Amendment rights.

## III. Equal Protection

■■■ The fee requirements of the Prison Litigation Reform Act also do not violate a prisoner's right to equal protection. Although the Fifth Amendment contains no Equal Protection Clause, "the Fifth Amendment's Due Process Clause prohibits the Federal Government from engaging in discrimination that is 'so unjustifiable as to be violative of due process.' " *Schlesinger v. Ballard,* 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 574 n. 3, 42 L.Ed.2d 610 (1975) (quoting *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954)). Nevertheless, because neither prisoners nor indigents are a suspect class and, as explained above, the classification does not implicate a fundamental right, we must uphold the Act's fee requirements if they are rationally related to a legitimate government interest. *See United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973); *see also City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.").

The Act undoubtedly meets the rational basis test. The legislation was aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts. Thus, Congress sought to put in place economic incentives that would prompt prisoners to "stop and think" before filing a complaint. Congress's rationale for placing the fee requirements on prisoners is captured in the statements of Senator Kyl:

> Section 2 will require prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits. In doing so, the provision will deter frivolous inmate lawsuits. The modest monetary outlay will force prisoners to think twice about the case and not just file reflexively. Prisoners will have to make the same decision that law-abiding Americans must make: Is the lawsuit worth the price? Criminals should not be given a special privilege that other Americans do not have....

> The volume of prisoner litigation represents a large burden on the judicial system, which is already overburdened by

increases in nonprisoner litigation. Yet prisoners have very little incentive not to file nonmeritorious lawsuits. Unlike other prospective litigants who seek poor person status, prisoners have all the necessities of life supplied, including the materials required to bring their lawsuits. For a prisoner who qualifies for poor person status, there is no cost to bring a suit and, therefore, no incentive to limit suits to cases that have some chance of success.

The filing fee is small enough not to deter a prisoner with a meritorious claim, yet large enough to deter frivolous claims and multiple filings.

141 Cong. Rec. S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl) (citations omitted). Deterring frivolous prisoner filings in the federal courts falls within the realm of Congress's legitimate interests, and the specific provisions in question are rationally related to the achievement of that interest. Accordingly, we find that the fee requirements do not violate a prisoner's constitutional right to equal protection. ＊

### IV. Due Process

#### A. Procedural Due Process

The requirements of procedural due process apply only to the deprivation of "liberty and property" interests under the Fifth and Fourteenth Amendments. *See Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Hampton contends that the fee requirements deprive him of two such interests: (1) the right to petition the government for redress of grievances and (2) his protected property interest in the funds in his prisoner trust account. As previously discussed, Hampton's ability to petition the government for redress of grievances has not been deprived or limited by the Act and thus that interest cannot provide the basis for a due process violation. Prisoners do have a protected interest in their money, however, and assuming the statute deprives prisoners of this interest in a constitutional sense, we must determine whether the process provided in the statute satisfies the constitutional requirements of procedural due process. We find that it does.

The Prison Litigation Reform Act does provide procedures prior to the withdrawal of funds from a prisoner's account. To determine whether this process is all that is constitutionally due before a prisoner can be deprived of this protected interest, we must consider three factors:

(1) the private interest that will be affected by the official action;

(2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

(3) the government's interest.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Although courts have recognized a prisoner's interest in his funds, they have also recognized that inmates are not granted full control over their money while in prison, and debit procedures similar to those in question have been applied in the prisoner context. *See Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 696, 136 L.Ed.2d 618 (1997). Moreover, prisoners are not absolutely deprived of the use of their funds when those funds are applied toward the filing-fee requirements. The funds are being utilized for the prisoner's benefit just as a non-indigent's money is used by him to proceed in federal court. Furthermore, the Act charges a prisoner no more than anyone else who is adjudged able to pay—and under much more generous payment terms. Thus, the prisoner's private interests do not weigh in favor of requiring additional procedures.

There is also little risk of an erroneous deprivation, and requiring additional procedures is not necessary. The prisoner is required to file an affidavit and a certified copy of his trust fund account statement. The court will order the fee assessment and the prison officials will forward the initial filing fee to the district court, when funds exist. After the initial filing fee is paid, the 20 percent payment provision becomes applicable. Such procedures are more generous than those accorded to the average litigant denied in forma pauperis status. Thus, the protections accorded prisoners are adequate.

The government's interest in the fee system is that of reducing frivolous prisoner suits to relieve the strain that litigation is placing on federal courts and the prison system in general. This interest, combined with the satisfactory procedures provided and the weak private right in this case, compel the conclusion that the Act does not violate a prisoner's right to procedural due process.

## B. Substantive Due Process

■■■ The fee requirements likewise do not violate a prisoner's substantive due process rights. We have recognized two types of substantive due process claims:

> The first type includes claims asserting a denial of a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under "the Fourteenth Amendment *simpliciter.*"
>
> . . . . .
>
> The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is whether the conduct complained of "shocks the conscience" of the court.

*Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996) (quoting *Mertik v. Blalock*, 983 F.2d 1353, 1367–68 (6th Cir. 1993)). Hampton has alleged that the first type of substantive due process is implicated by the Act's fee requirements. Hampton, however, has not established that the Act violates any "right, privilege, or immunity secured by the Constitution or by federal statute." Moreover, the Act is not "arbitrary and capricious" because it does advance a legitimate government interest and does not constitute an unreasonable means of advancing that interest. *See Curto v. City of Harper Woods*, 954 F.2d 1237, 1243 (6th Cir. 1992) (per curiam). Accordingly, the fee requirements of the Prison Litigation Reform Act do not violate a prisoner's substantive due process rights.

## V. Double Jeopardy

■■■ The fee requirements likewise do not violate the Double Jeopardy Clause of the Fifth Amendment. "[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The first two abuses are not implicated in this case. Hampton contends, however, that the fee requirements subject prisoners to an additional sanction for purposes of further punishment and thus violate the Double Jeopardy Clause. We do not agree.

■■■ The determination of whether a statute imposes "multiple punishments for the same offense" turns on the punitive nature of the legislation. We have developed a framework for ascertaining whether a statutory scheme is punitive for purposes of the Double Jeopardy Clause. *See United States v. WRW Corp.*, 986 F.2d 138, 140–41 (6th Cir.1993). The first inquiry is whether Congress intended the Act to be punitive. *Id.* If the Act was not intended to be punitive, the next step is to determine whether the statute is so punitive either in purpose or effect as to negate Congress's non-punitive intent. *Id.* The purpose and intent of the Act are to reduce the flood of frivolous prisoner litigation in federal courts, and in striving to achieve that purpose, the Act places a burden on prisoners no greater than that felt by the vast majority of other litigants seeking to prosecute a civil action. Accordingly, the Act cannot be said to have a punitive intent or purpose, and the effect on prisoners is not so onerous that it renders the Act punitive. Thus, the fee requirements placed on prisoners under the Prison Litigation Reform Act do not violate the Double Jeopardy Clause of the Fifth Amendment.

Accordingly, we find that the fee provisions of the Prison Litigation Reform Act violate neither a prisoner's constitutional right of access to the courts, nor his rights under the First Amendment, the Due Process Clause, the Equal Protection Clause, or the Double Jeopardy Clause of the United States Constitution. Having concluded that the fee provisions are constitutional, we di-

rect the clerk of this Court to process the motion for pauper status in normal course.