Russell BECK, et al., Plaintiffs,

v.

J. Fife SYMINGTON III,
et al., Defendants.

No. CIV.95–1616 PHX RCB.

United States District Court,
D. Arizona.

May 12, 1997.

Paul Joseph Gattone, Raquel Avina Abel, Tucson, AZ, for plaintiffs.

Bruce L. Skolnik, Charles R. Pyle, Assistant Attorneys General, Tucson, AZ, for defendants.

## ORDER

BROOMFIELD, Chief Judge.

Plaintiffs have filed a class action lawsuit on behalf of all Arizona inmates who have filed, or will file, a lawsuit in state court who have been, or will be, required to pay court fees and costs due solely to their status as inmates confined to correctional facilities operated by the Arizona Department of Corrections. Specifically, plaintiff's challenge the constitutionality of A.R.S. § 12–306(C) and

A.R.S. § 12–302(B). Currently before the court is plaintiffs' motion for summary judgment and defendants' cross-motion for summary judgment. Oral argument was heard on May 5, 1997, at which time these matters were taken under advisement. Now, having carefully considered the arguments involved therein, the court rules.

## DISCUSSION

In an effort to stem the tide of prisoner litigation, the Arizona state legislature enacted the statutes herein at issue. A.R.S. § 12–302(B) [1] provides that, when funds exist, the court shall collect twenty per cent of an inmate's prisoner account as a partial down payment towards the total payment of court fees. Twenty per cent of all subsequent deposits into that account are then withheld until such time as the court fees are paid in full. A.R.S. § 12–306(C) [2] provides substantially the same scheme with relation to an inmate's payment of actual court costs.

**1.** It states, in its entirety:

Except in cases of dissolution of marriage and child support, and notwithstanding subsection A of this section or chapter 9, article 5 of this title, if the applicant is an inmate confined to a correctional facility operated by the state department of corrections, on filing the court shall assess and, when funds exist, collect as a partial payment of any court fees required by law a first time payment of twenty per cent. Thereafter twenty per cent of all deposits into the prisoner's spendable account administered by the state department of corrections shall be withheld until the actual court fees are collected in full. The department of corrections shall annually forward any monies withheld to the court of jurisdiction before January 31. If a prisoner is released before the full fees are collected, the department of corrections shall forward the amount of fees collected through the date of release. The court of jurisdiction is responsible for sending the department of corrections a copy of the order mandating the amount of fees to be paid. Nothing in this subsection prohibits an applicant from filing an action or proceeding if the applicant is unable to pay the filing fees.

**2.** A.R.S. § 12–306(C) provides:

Except in cases of dissolution of marriage and child support and notwithstanding subsection B of this section or chapter 9, article 5 of this title, if the applicant is an inmate confined to a correctional facility operated by the state department of corrections and the inmate brings a civil action or proceeding, the inmate is responsible for the

The effect of these statutes is that inmates can no longer apply for a waiver of court fees and costs; now these costs must be paid in installments until they are paid in full. Unincarcerated individuals who are unable to pay these fees and costs, however, may continue to apply for a waiver pursuant to A.R.S. § 12–302(A) and A.R.S. § 12–306(B).

Plaintiffs argue that this unequal treatment violates their right to equal protection under the federal Constitution. In addition, they argue that these statutes unconstitutionally burden their right of access to the courts. Identical arguments have been made in cases challenging similar provisions of the federal Prison Litigation Reform Act ("PLRA").[3] However, both these arguments have recently been rejected by the Fourth and Sixth Circuits, respectively. *See Roller v. Gunn,* 107 F.3d 227 (4th Cir.1997); *Hampton v. Hobbs,* 106 F.3d 1281 (6th Cir.1997).

## I. *Right of Access to the Courts*

■ Although both parties agree that inmates have a fundamental right of access to

full payment of actual court costs. On filing the action or proceedings the court shall assess and, when funds exist, collect as a partial payment of any court costs required by law a first time payment of twenty per cent. Thereafter twenty per cent of all deposits into the prisoner's spendable account administered by the state department of corrections shall be withheld until the actual court costs are collected in full. The department of corrections shall annually forward any monies withheld to the court of jurisdiction before January 31. If a prisoner is released before the full cost are collected, the department of corrections shall forward the amount of costs collected through the date of release. The court of jurisdiction is responsible for sending the department of corrections a copy of the order mandating the amount of court fees to be paid. Nothing in this subsection prohibits an applicant from filing an action or proceeding if the applicant is unable to pay the court costs.

**3.** Indeed, Senator Kyl (R–Ariz.) helped draft the PLRA so that it mirrored the statutes herein at issue. *See* 141 Cong. Rec. § 7525 (daily ed. May 25, 1995) ("Finally, Mr. President, I want to express my thanks to Arizona Attorney General Grant Woods. In many respects, the Prison Litigation Reform Act is modeled after the attorney general's own state initiative in Arizona. Without the invaluable input of Attorney General Woods and his staff, Senator Kyl and I would not be here today introducing this important piece of legislation.") (statement of Sen. Dole (R–Kan.)).

the courts, *see, e.g., Lewis v. Casey,* ⸺ U.S. ⸺, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), they nevertheless frame this issue quite differently.

Plaintiffs assert that by denying them the ability to receive a waiver of the filing fees and court costs, A.R.S. § 12–302(B) and § 12–306(C) unconstitutionally chill their fundamental right of access to the courts. Accordingly, they argue that this court must examine these statutes using strict scrutiny.

Defendants, however, do not characterize this issue so broadly. Rather, for them the issue is whether A.R.S. § 12–302(B) and § 12–306(C) unconstitutionally burden an inmate's right to file a lawsuit free of charge. However, because there is no such right, fundamental or otherwise, defendants argue that these statutory schemes need only have a rational basis to survive review. The court agrees with defendants' assessment.

■ While plaintiffs are correct that the right of access to the courts is fundamental, on these facts the court fails to see how this right is burdened by the statutes herein at issue. The touchstone of an inmate's right of access to the courts is that his access be "adequate, effective, and meaningful." *Lewis,* ⸺ U.S. at ⸺, 116 S.Ct. at 2180. This right has never been interpreted to mean that an inmate's access must also be free of charge. *See Roller,* 107 F.3d at 231; *Hampton,* 106 F.3d at 1285; *Lumbert v. Illinois Dept. of Corrections,* 827 F.2d 257, 259 (7th Cir.1987). To the contrary, federal circuit courts throughout the country have consistently held that collecting partial filing fees from inmates who, were they not inmates, might otherwise qualify for a filing fee waiver, does not burden their right of access to the courts.[4] *See id.*

In *Lumbert v. Illinois Dept. of Corrections,* 827 F.2d 257 (7th Cir.1987), Lumbert argued that the district court's General Order, which required inmates applying for IFP status to partially pay the filing fee in an amount not to exceed 50% of the inmate's

average monthly income for the previous six months, unconstitutionally burdened his right of access to the courts. Holding that the Constitution allows "reasonable costs [to] be imposed on persons who want to sue," the Seventh Circuit found that Lumbert's fundamental right to access the courts had not been burdened. *Id.* at 259–60. In this regard, Judge Posner's compelling reasoning is worthy of extensive quotation:

Litigation is not a free good, and its costs are not limited to those who initiate it. They are borne not only by the plaintiff but by the defendant, by the taxpayer, and by the parties to other lawsuits in the same court, whose cases may be delayed or who may receive less attention from the judges that if the caseload were lighter. If the suit is frivolous the defendant may be able to recover his direct litigation outlays from the plaintiff by an order awarding attorney's fees, entered at the close of the case. But the order can at best cover only a portion of the total social costs of the litigation, and of course it is ineffectual if the plaintiff can't afford to pay the award. Moreover, even if a suit is not frivolous ... it will impose costs on the defendant and the judicial system. We want the putative plaintiff to think about the case and not just file reflexively; having to make even a modest monetary outlay may help focus his thinking.

And just because a plaintiff can't afford to pay the full filing fee, it doesn't follow that his lawsuit is incapable of imposing substantial costs on the defendant and on others. Indeed, the problem of litigation that generates social costs in excess of social benefits is particularly acute with respect to litigation by indigents, since they cannot be deterred from suit by the prospect of having to pay their adversaries' legal expenses should the suit be adjudged frivolous. The problem is even more acute when the indigent plaintiff is a prison inmate, because the costs of a prisoner's time are very low. Lumbert for

---

4. In the federal system such a waiver was obtained pursuant to 28 U.S.C. § 1915. It required the inmate to prove his impecunious status before he could proceed *in forma Pauperis* ("IFP"). However, while an unincarcerated individual may still apply for IFP status in the same manner, the PLRA has significantly altered this statute with respect to inmates.

example has filed more than thirty lawsuits, all as an inmate, since 1980.

Much can be done to control the problem of unwarranted prisoner litigation by careful screening of cases by the district court at the outset. The court did this, by requiring Lumbert to certify that his complaint contained only new claims, not claims rejected in his previous lawsuits. But the role of incentives should not be ignored. It is proper that prisoners be made to think twice—by monetary exactions well within their ability, limited as it is, to pay—about bringing lawsuits that have no significant prospect of obtaining any worthwhile relief. A suit not worth $7.20 to an inmate who could pay this fee is unlikely to be worth the time of the courts. If the inmate thinks that a more worthwhile use of his funds would be to buy peanuts and candy (two of the items that, the record shows, Lumbert has purchased from the prison commissary) than to file a civil right suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor.

*Id.* at 259–60.[5]

Similarly, in *Hampton v. Hobbs,* 106 F.3d 1281 (6th Cir.1997), Hampton argued that that portion of the PLRA requiring him to pay the filing fee in installments, rather than granting him IFP status, unconstitutionally burdened his right of access to the courts. In rejecting Hampton's claim, the Sixth Circuit found that the partial payment scheme of the PLRA—which, as this court has already noted, bears more than a coincidental similarity to the statutes herein at issue, *see* footnote 3, *supra*—did not deprive Hampton of "adequate, effective, and meaningful access to the courts." *Hampton,* 106 F.3d at 1284. In the event the inmate cannot pay even the initial partial filing fee, the PLRA does not prevent the inmate from filing suit. *See* 28 U.S.C. § 1915. Furthermore, the installment fees required of the inmate are slight (only 20% of his proceeding month's income). *See id.* This, despite the fact that "prisoners are in the custody of the state and have the 'essentials of life' provided at government expense." *Hampton,* 106 F.3d at 1285 (citing *Evans v. Croom,* 650 F.2d 521, 523 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982) ("A prisoner is assured of the necessities of life, housing, food, clothing and medical care at state expense. His financial needs are thus not similar to those of a person in ordinary life.")). In light of these facts, the court found the burden caused by these fee requirements to be minimal and, consequently, not a hindrance on an inmate's ability to gain adequate, effective, and meaningful access to the courts.

Only six days after *Hampton* was decided, the Fourth Circuit rejected an identical challenge to the PLRA in *Roller v. Gunn,* 107 F.3d 227 (4th Cir.1997). As with *Hampton,* the court noted that indigents do not have a constitutional right to file suit in all cases without the payment of fees. *Id.* at 231. Indeed, quoting *Lumbert,* the court held that as a general rule it is constitutional to impose reasonable fees on those persons who wish to sue. *Id.* at 232.

The court then analyzed the specific partial payment requirements of the PLRA. It found that "[t]hese mild steps do not begin to im-

---

**5.** In *Olivares v. Marshall,* 59 F.3d 109 (9th Cir. 1995), the Ninth Circuit expressly relied upon *Lumbert* in rejecting an inmate's challenge that the district court's collection of a partial filing fee was unauthorized by the pre-PLRA IFP statute. Although not a challenge based on the inmate's right of access to the courts, the Circuit's decision to uphold the decision of the district court is instructive nevertheless.

It is undisputed that in the six months preceding the submission of his complaint, Olivares received $310.00 from his family. Moreover, throughout the contest over fees in the district court, Olivares consistently withdrew $35 a month, more than the partial filing fee required, for such items as name brand toiletries instead of the generic toiletries furnished by the prison, crackers, potato chips, corn chips, cookies, and candy. The district judge was entitled to consider Olivares's own economic choices about how to spend his money, as between his filing fee and comforts purchased in the prison commissary, when the court determined the size of the partial filing fee....
"If the inmate thinks a more worthwhile use of his funds would be to buy peanuts and candy ... than to file a civil rights suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor."
*Id.* at 112 (quoting *Lumbert,* 827 F.2d at 260).

pose an unconstitutional burden on a prisoner's access to the courts." *Id.* at 233.

Roller maintains that even though the PLRA amendments include safeguards to ensure the truly indigent will have access to the courts, the practical effect of the amendments will be that prisoners with other expenses will be unable to afford lawsuits. This argument, however, misses the entire point of the statute. Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state. Those living outside of prisons cannot file a lawsuit every time they suffer a real or imagined slight. Instead, they must weigh the importance of redress before resorting to the legal system. If a prisoner determines that his funds are better spent on other items rather than filing a civil rights suit, "he has demonstrated an implied evaluation of that suit" that the courts should be entitled to honor.

*Id.* (quoting *Lumbert,* 827 F.2d at 260).

Plaintiffs have put forward no persuasive reason why the reasoning of *Lumbert, Hampton* or *Roller* should not apply with equal force in this case. Indeed, as the court has continuously noted, the statutory scheme at issue in this case is almost identical to the scheme upheld in *Hampton* and *Roller.* Both the PLRA and Arizona's statutes require only a 20% initial payment, with 20% installments thereafter. *Compare* 28 U.S.C. § 1915 *with* A.R.S. §§ 12–302 & 12–306. Furthermore, in the event that an inmate is unable to pay even the initial partial filing fee or court costs, both allow that inmate to file his action despite his inability to pay. *Id.* Based on these facts, the court finds that Arizona's statutes do not affect an inmate's ability to gain adequate, effective, and meaningful access to the courts. *See Hampton,* 106 F.3d at 1284. Rather, they simply force an inmate to make the same economic choices otherwise required of unincarcerated litigants. *See Roller,* 107 F.3d at 233; *Hampton,* 106 F.3d at 1285; *Lumbert,* 827

F.2d at 260. Such a burden is minimal at best. *See id.*

■ Accordingly, because plaintiffs' fundamental rights are not burdened by the statutes they challenge, strict scrutiny is an inappropriate standard of review. Rather, the defendants' statutes need only have a rational basis to be upheld. Clearly they do.

As noted above, the Arizona statutes were enacted to stem the tide of frivolous prisoner lawsuits. Certainly the legislature could have rationally concluded that by forcing inmates to "put their money where their mouth is," those inmates who did not believe in the merits of their lawsuit would be less inclined to file it. In turn, the number of frivolous filings would decrease. This is both a legitimate concern for the legislature, and an entirely rational method for achieving it. Accordingly, there is no constitutional violation.

## II. *Equal Protection*

■ In analyzing plaintiff's equal protection challenge, the court must initially determine whether the right burdened is deemed fundamental and whether the group burdened is considered a suspect class. If so, the statute must survive strict scrutiny to be constitutional. If not, the court need only find that a rational basis underlies the statute's enactment. *See, e.g., Heller v. Doe,* 509 U.S. 312, 319–20, 113 S.Ct. 2637, 2642–43, 125 L.Ed.2d 257 (1993).

■ As the previous section makes clear, the challenged statutes do not burden plaintiffs' right to access the courts. Accordingly, plaintiffs' fundamental rights are not at issue. Furthermore, neither prisoners nor indigents are considered a suspect class. *See Coakley v. Murphy,* 884 F.2d 1218, 1221 (9th Cir. 1989) (prisoners); *Harris v. McRae,* 448 U.S. 297, 323, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980) (indigents). Therefore, Arizona's statutes will survive review so long as they have a rational basis; that is, they are rationally related to a legitimate government interest.

As noted in the previous section, the Arizona statutes rationally relate to the legislature's legitimate desire to curb frivolous prisoner filings in Arizona's courts. Moreover, both *Roller* and *Hampton* have reached iden-

tical conclusions with respect to the PLRA. *See Roller*, 107 F.3d at 234 ("In sum, the equal protection question is not a close one. The legislative solution is entirely rational, does not violate any fundamental rights, and does not single out a suspect class for disparate treatment."); *Hampton*, 106 F.3d at 1287 ("Deterring frivolous prisoner filings in the federal courts falls within the realm of Congress's legitimate interests, and the specific provisions in question are rationally related to the achievement of that interest. Accordingly, we find that the fee requirements do not violate a prisoner's constitutional right to equal protection."). Accordingly, because the Arizona statutes are rationally related to a legitimate governmental interest, they do not violate the equal protection clause.

IT IS ORDERED denying plaintiffs' motion for summary judgment (doc. 61).

IT IS FURTHER ORDERED granting defendants' cross motion for summary judgment (doc. 65). The Clerk is directed to enter judgment for defendants and terminate this case.