**Michael K. BAILEY; Robert J. Allen; Charles E. Skotynsky, Plaintiffs—Appellants,**

v.

**Harold E. CARTER, Warden, et al., Defendants—Appellees.**

No. 99–4282.

United States Court of Appeals, Sixth Circuit.

July 20, 2001.

Before BOGGS, SUHRHEINRICH, and JOHN R. GIBSON,* Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Michael Bailey, Robert Allen, and Charles Skotynsky, inmates at Lima Correctional Institution, appeal the district court's order dismissing as frivolous their action brought under 42 U.S.C. § 1983 (Supp. IV 1998) challenging an Ohio statute and rule that require a $3 copayment for medical services.[1] The inmates assert a multitude of constitutional challenges to the statute and rule. We affirm.

The Ohio Legislature enacted a financial responsibility statute that allows the Ohio Department of Rehabilitation and Correction to recover costs of supervision and incarceration from certain offenders. Ohio Rev.Code Ann. § 5120.56 (West Supp. 2001). The Department can recover these costs directly from any funds in its possession that are being held for the offender. Ohio Rev.Code Ann. § 5120.56(B). If the offender has assets in the possession of a third party, the Department can ask the attorney general to initiate proceedings to collect the costs from these assets. *Id.* Section 5120.56(D)(1) allows the Department to assess an offender for "[a]ny user fee or copayment for services at a detention facility or housing facility, including, but not limited to, a fee or copayment for sick call visits." The Department has enacted only one provision pursuant to section 5120.56; this rule provides that inmates must pay a $3 copayment for certain medical visits. Ohio Admin. Code § 5120–5–13 (1998). The inmate is notified of the fee at the time of the visit, and the copayment is debited from his or her prisoner account. Ohio Admin. Code § 5120–5–13(C). Inmates can contest the charge through informal complaints and

---

* The Honorable John R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Bailey, Allen, and Skotynsky (collectively, the inmates) attempt to argue that several statutes enacted as part of S.B. 111, 122d Gen. Assem., 1997–98 Reg. Sess. (Ohio 1997), are unconstitutional. The argument and facts contained in their complaint, however, appear to be limited to challenging only one of those statutes—the one that authorized the copayment rule. We limit our discussion to this statute and the corresponding rule as they have been applied to the inmates. They also allege that they no longer receive over-the-counter medication free, but must either pay for it or go to sick call to get it prescribed and be subject to the required copayment. We address this prison policy, which is apparently unrelated to the statute or the rule, only when specifically relevant to the inmates' claims.

the institutional grievance system. Ohio Admin. Code § 5120–5–13(H). If an inmate is unable to pay, he or she will not be denied needed medical treatment. Ohio Admin. Code § 5120–5–13(A). Each inmate who is a party to this case has had at least one copayment deducted from his account.

In their complaint, the inmates alleged that the financial responsibility statute and the copayment rule violate the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as the Ex Post Facto Clause. As part of their Fourteenth Amendment claim, the inmates alleged that the statute and rule violate due process by infringing upon the rights created by Ohio's nondelegation doctrine, Ohio Rev.Code Ann. § 2329.66 (West Supp. 2001), 15 U.S.C. § 1673 (1994), and Ohio Rev.Code Ann. § 5120.021 (West Supp. 2001). In addition, they alleged that the statute is vague and overbroad.

The district court dismissed the inmates' complaint as frivolous under 28 U.S.C. § 1915A (Supp. IV 1998). We review this dismissal de novo. *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir.2000). A complaint is frivolous if it lacks an arguable basis in law or fact, that is, if its legal theories are indisputably meritless or if its factual allegations are fantastic. *Id.*

▮ The inmates make several First Amendment claims: first, that the statute chills prisoner litigation; second, that the statute imposes a bar on prisoner affiliation with political or religious groups;[2] and third, that the statute prohibits the free exercise of religion. The basis for these claims seems to be that the financial responsibility statute allows the Department to deplete prisoner accounts, depriving the inmates of the funds necessary to exercise their First Amendment rights. While these claims may or may not have an arguable basis in law, the inmates do not allege that the $3 copayment charge has prevented them from litigating any claims, kept them from joining political or religious groups, or inhibited the exercise of their religion in any way. Because a hypothetical injury is insufficient to give the inmates standing, *see Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 920 (6th Cir.1998), the district court did not have jurisdiction over the inmates' First Amendment claims, *see Greater Cincinnati Coalition for the Homeless v. City of Cincinnati*, 56 F.3d 710, 715 (6th Cir. 1995). We affirm the dismissal of these claims on this ground.

▮ The inmates also lack standing to pursue two other claims: that the statute permits illegal searches and seizures in violation of the Fourth Amendment because it requires private citizens to report economic transactions with prisoners to facilitate confiscation of prisoners' assets, and that prisoners and other persons may be forced to incriminate themselves, in violation of the Fifth Amendment, in order to satisfy the Department's claim for funds from third parties. The copayments were deducted from the inmates' prisoner accounts. No other parties or economic transactions were involved.

▮ The inmates next argue that their Fifth Amendment rights were violated because they were deprived of their property without just compensation. This "takings" claim is indisputably meritless. *Cf. Reynolds v. Wagner*, 128 F.3d 166, 180 (3d

---

2. The district court failed to address this second claim. The district court also failed to address several other arguments made by the inmates, arguments which we address in this opinion. Because frivolousness is a question of law and because the arguments not addressed by the district court are indisputably meritless, we see no need to remand.

Cir.1997) ("[I]n exchange for the fees, the inmates receive the benefit of health care, the value of which undoubtedly exceeds the modest fee assessed .").

■ The inmates' allegation that the statute and rule violate their Sixth Amendment right to counsel lacks an arguable basis in law. There is no right to counsel in prison grievance proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 570, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (no right to counsel in prison disciplinary proceedings).

■ The inmates' claim that their Eighth Amendment rights have been violated is similarly meritless. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Because the inmates do not allege that they were denied medical treatment, they have alleged no facts that could be construed as deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir.1985) (per curiam). In addition, the rule specifically provides that "[n]o inmate shall be denied needed medical treatment because of a lack of ability to pay. Inmates shall receive appropriate medical care based on their present need, without regard to financial status." Ohio Admin. Code § 5120–5–13(A).

The inmates direct us to an allegation in their complaint that the over-the-counter medication policy forces them to be "around a bunch of sick people who are too poor to purchase a supply of medications from the commissary." This allegation, even if proven, would not suffice to show deliberate indifference to the inmates' serious medical needs. The inmates also allege that the policy leads prison staff "to conclude that denying medications is not only appropriate—but it is mandatory per institutional policy." They allege only that they were required to pay for medication, however, not that they were denied medication. Accordingly, their Eighth Amendment claim is indisputably meritless.

■ The inmates argue that the statute and rule violate their Fourteenth Amendment rights because the confiscation process infringes upon rights granted by Ohio's nondelegation doctrine, Ohio Rev. Code Ann. § 2329.66, 15 U.S.C. § 1673, and Ohio Rev.Code Ann. § 5120.021 and because they allow the Department to deprive inmates of their property without due process.

Under Ohio's nondelegation doctrine, "the General Assembly cannot delegate its essential legislative power to administrative bodies or officers." *Redman v. Ohio Dept. of Indus. Relations*, 75 Ohio St.3d 399, 662 N.E.2d 352, 357 (Ohio 1996). "The basic purpose of the nondelegation doctrine is to control unbridled agency discretion." *Id.* Section 2329.66 lists property that a person domiciled in Ohio may hold exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order. Section 1673 places certain restrictions on garnishment,[3] which is defined as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." 15 U.S.C. § 1672(c) (1994). None

---

**3.** To the extent that the inmates are arguing a substantive due process violation, their claim is frivolous because 15 U.S.C. § 1673 secures no right that has been denied by the financial responsibility statute or the copayment rule. *See Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir.1997) (there are two types of substantive due process claims: those that assert denial of a right, privilege, or immunity secured by the Constitution or federal statute and those that assert that an official act shocks the conscience).

of these provisions is relevant to the inmates' claims in a way that creates constitutionally protected interests.

Ohio Rev.Code Ann. § 5120.021 provides that prisoners who were sentenced before July 1, 1996 (as the inmates were) are subject to the provisions of Chapter 5120 as it existed before July 1, 1996. Ohio Rev.Code § 5120.021(A). The financial responsibility statute, section 5120.56, which is part of Chapter 5120 and which provides the statutory authority for the medical copayment, became effective on March 17, 1998. Even if we assume that the Department is violating state law by charging the inmates the copayment, this possible state law violation would not give rise to a due process violation. *See Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir.1988) (en banc) ("A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules.").

■ The inmates do have a protected property interest in their money. *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir.1997). We question whether the inmates were truly "deprived" of their property, however. The copayment fee was deducted from their accounts in exchange for medical services. *See Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir.1981) (per curiam) (no basis for due process claim where deductions from prisoner accounts for postage were "assessment[s] for value received" and plaintiffs did not contend that they did not receive the services for which they were charged). Even if the copayment charge does deprive the inmates of property within the meaning of the Due Process Clause, the inmates failed to allege that the post-deprivation procedure is inadequate. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir.1983). The inmates' due process claim is meritless.

■ The inmates argue that the statute and rule violate the Fourteenth Amendment principle of fundamental fairness. This claim is frivolous because the concept of fundamental fairness is not relevant in this situation. *See Hutchison v. Marshall*, 744 F.2d 44, 47 (6th Cir.1984) (fundamental fairness has "two lives": first, "as the doctrinal conduit through which various provisions of the Bill of Rights were incorporated or absorbed into the fourteenth amendment," and second, "as a yardstick by which to judge irregularities in criminal trials").

■ The inmates allege that the copayment rule violates equal protection because it has an adverse effect on pagan prisoners, older prisoners, and prisoners with chronic health problems. Because the inmates have not alleged that the Department had a discriminatory purpose in enacting the facially neutral rule, *see Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir.1994), this claim lacks an arguable basis in law.

■ The inmates' ex post facto claim is also frivolous. Under this clause, statutes that make a previously innocent act criminal, increase the punishment for a crime after its commission, or deprive a defendant of a defense that was available at the time a crime was committed are prohibited. *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Because the financial responsibility statute and the medical copayment rule impose no punishment on the inmates, *see Cutshall v.. Sundquist*, 193 F.3d 466, 477 (6th Cir. 1999), *cert. denied*, 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 460 (2000), this claim lacks an arguable basis in law.

The inmates allege that the statute is overbroad and vague because it grants "unbridled discretion" to the Department to make rules without establishing any guiding principles. Dismissal of these claims as frivolous was appropriate, as neither of these concepts is relevant to the statute at issue. Overbreadth is a standing doctrine that allows a person to challenge a regulation as an infringement on the exercise of First Amendment rights even where the regulation may be validly applied to that person. *Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Because section 5120.56 does not regulate constitutionally protected speech or association, the overbreadth doctrine is inapplicable. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Section 5120.56 does not prohibit any conduct, and vagueness principles provide no basis for challenging it.

We have considered the inmates' remaining claims—that they should not be subject to paying costs of supervision and incarceration because the Department has voluntarily decided to keep them incarcerated and that the statute and rule void Ohio Rev.Code Ann. § 2329.66 and 15 U.S.C. § 1673 by implication—and we conclude that they are also indisputably meritless.

\*  \*  \*  \*  \*  \*

We therefore affirm the dismissal of the inmates' federal claims as frivolous under 28 U.S.C. § 1915A. We express no opinion on the merits of any claims construable as founded only on violations of state law and affirm the dismissal of such claims for lack of jurisdiction.